GEORGE D. WHITTEN & others[1] *vs.* BOARD OF APPEALS OF WOBURN & others. [2] No. 94-P-331. April 27, 1995. *Zoning,* Nonconforming use or structure, Special permit, Sale of diesel fuel. *Words,* "Nonconforming use."

This is an appeal by the plaintiffs (collectively referred to as Juniper) from a summary judgment entered on their appeal from the board's affirmance of the decision of the building inspector that had the effect of requiring Juniper to discontinue the sale of diesel fuel from its property. We affirm.

1. *The undisputed facts.* In May, 1962, Juniper's predecessor in title, Gerard Realty Co. (Gerard), was issued a building permit for the construction of a "warehouse for the storage, handling, loading, unloading, receiving and shipping of freight with the temporary storage and parking of vehicles (including motor trucks and trailers) incidental to said warehousing operation and facilities for the maintenance and servicing of all such vehicles." Underground fuel storage tanks were installed at the time of construction, and a year later Gerard obtained a license for the "keeping, storage, manufacture or sale" of flammables. G. L. c. 148, § 13. The city council was the granting authority for both the building permit and the license, which was regularly renewed. Thereafter, upon lawful transfers and retransfers of the § 13 license (Juniper purchased the property in 1983), the lessees of Gerard and Juniper sold fuel continuously until January, 1992, when the building inspector required that the sales cease unless a special permit was obtained. Prior to 1985, fuel sales could be lawfully conducted from the premises, which were situated in an area zoned as a general industrial district, with a special permit issued by the city council. Because of a 1985 zoning amendment prohibiting any fuel sales in the newly zoned district, a special permit is not a possibility.

2. *Nonconforming use of the property.* In claiming it has the right to sell fuel from its premises, Juniper constructs the following argument. Because the factors to be considered by the city council in acting upon applications for renewals of the § 13 license and a special permit are virtually identical, see *Chase* v. *Selectmen of Littleton,* 2 Mass. App. Ct. 159, 160

---

[1]Amy Whitten, Charles D. Whitten, and Robert P. Miller, Jr., doing business as Juniper Development Group.

[2]The building commissioner and the city of Woburn.

(1974), the repeated renewal of its license must be deemed a grant of right to carry on fuel sales. Therefore, its use of the premises for fuel sales constitutes a valid nonconforming use under G. L. c. 40A, § 6. Because the special permit would have been easy to obtain, this valid nonconforming use was not affected by the lack of a special permit. See *Selectmen of Wrentham* v. *Monson*, 355 Mass. 715, 717-718 (1969) ("A valid nonconforming use is not destroyed in this case by any failure to comply with local or State licensing provisions where the defect . . . can be easily remedied"); *Derby Refining Co.* v. *Chelsea*, 407 Mass. 703, 711 (1990) ("A valid nonconforming use is not rendered unlawful by failure to possess requisite. government approval, provided that such approval can be easily obtained").

A licensed use of property is not axiomatically a lawful use of property for zoning purposes. "The legal status of a nonconformity is determined as of the date of the 'first publication of notice of the public hearing' of the ordinance or by-law which rendered the use or structure contrary to zoning." Bobrowski, Massachusetts Land Use and Planning Law § 6.1 (1993), citing *Morin* v. *Board of Appeals of Leominster*, 352 Mass. 620, 623 (1967), and *Tamerlane Realty Trust* v. *Board of Appeals of Provincetown*, 23 Mass. App. Ct. 450, 454 (1987). See also the discussion of the meaning of "nonconforming use" in *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 528-529 (1990). Use of the property for fuel sales without a special permit at all times here relevant was not a valid nonconforming use.

Even were it appropriate in the present circumstances to consider whether a special permit was easily obtainable (compare *Selectmen of Wrentham* v. *Monson*, 355 Mass. at 715-716; *Derby Refining Co.* v. *Chelsea*, 407 Mass. at 711, where uses were unlicensed but lawfully in existence at the time of subsequent zoning enactments), we could not reasonably reach such a conclusion. There is nothing in the record to show that the city council, in granting a building permit and issuing the § 13 fuel license, had any reason to believe that fuel was to be stored for purposes of public sales rather than, or in addition to, the servicing of the applicant's own vehicles used in its storage and warehouse business. Although, in acting upon applications for special permits for fuel sales, the city council would take into account factors similar to those considered in passing upon § 13 license requests, the decision to grant or deny a special permit could reasonably depend, as matter of discretion, upon the degree of use to which the fuel license would be put. See *E.A.D. Realty Corp.* v. *Selectmen of Shrewsbury*, 6 Mass. App. Ct. 826, 827 (1978), and cases therein cited.

Our conclusion, that there is nothing in the record to show that the city council (the permit-granting authority) had any reason to believe that the underground storage tanks would be used for a purpose other than to service the applicant's own vehicles, also disposes of Juniper's argument under G. L. c. 40A, § 7. See *Lord* v. *Zoning Bd. of Appeals of Somerset*,

30 Mass. App. Ct. 226, 228 (1991). Additionally, the defenses of laches and estoppel are unavailable to Juniper for the reasons, if no other, set out in *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 224-225 (1982).

*Judgment affirmed.*

The case was submitted on briefs.

*M. Catherine Mawn Riley* for the plaintiffs.

*Ellen Callahan Doucette*, Assistant City Solicitor, for the defendants.