## CUMBERLAND FARMS, INC. *vs.* ZONING BOARD OF APPEALS OF WALPOLE.

No. 02-P-1549.

Suffolk. January 13, 2004. - May 4, 2004.

Present: GREENBERG, CYPHER, & MILLS, JJ.

*Zoning,* Special permit, Gasoline station.

In a zoning appeal, a Land Court judge correctly concluded that a landowner's installation, without authority, of three gasoline storage tanks on its property was not protected by the statute of limitations in G. L. c. 40A, § 7. [127-128]

This court concluded that the defendant town zoning board of appeals (board) properly required the plaintiff landowner to obtain a special permit for extension or alteration of a nonconforming use under G. L. c. 40A, § 6, where the plaintiff sought to store more gasoline on its property than allowed under the town's by-law [128-129]; and that the board could have rationally concluded that the additional gasoline storage the plaintiff proposed would be substantially more detrimental to the neighborhood than the existing storage [129-131].

CIVIL ACTION commenced in the Land Court Department on April 19, 1995.

The case was heard by *Peter W. Kilborn,* C.J.

*Daniel E. Dilorati* for the plaintiff.

*Barbara J. Saint Andre* for the defendant.

MILLS, J. The landowner, Cumberland Farms, Inc. (CFI), appeals from a Land Court judgment which affirmed, on a zoning appeal pursuant to G. L. c. 40A, § 17, the decision of the zoning board of appeals of Walpole (board). The board denied CFI's requests for special permits to alter and extend CFI's nonconforming use of its property (locus) for the storage and retail sale of gasoline. On appeal, CFI asserts that (1) its use of the locus is protected by the ten-year "statute of limitations" in G. L. c. 40A, § 7; (2) its use is, in any event, nonconforming

and subject to the protection of G. L. c. 40A, § 6, and does not require the special permits that were applied for and denied; and (3) if special permits were required, the judge should have ordered their issuance because the board was arbitrary or capricious in denying them. We affirm.

1. *Background.*[1] The locus is located on Washington Street in Walpole, in a "B" (for business) zoning district, and is currently the site of a gasoline service station, retail store, and restaurant. The locus is also located in the town's water resource protection overlay district (WRPD),[2] according to the Walpole zoning by-law. Gasoline service stations are prohibited in the B district.

In 1972, CFI[3] installed three 6,000 gallon gasoline tanks, although it had received municipal approval to install only three 4,000 gallon tanks. These were intended to replace two 1,000 gallon tanks that were historically used for the storage and sale of gasoline, a nonconforming use.[4]

The town's board of health, in March of 1994, advised CFI that it was required to replace the tanks installed in 1972 in order to comply with that board's underground fuel and chemical storage regulations mandating the removal of tanks older than twenty years. As a result, on July 11, 1994, CFI applied to the town's fire chief for a permit to replace the three 6,000 gallon tanks with one 6,000 gallon and one 12,000 gallon tank. The chief approved the permit. By letter dated July 27, 1994, CFI was advised that the board of health had approved the replacements. CFI then submitted plans for the replacement of the tanks and an application for a building permit to the town's

---

[1]We take the essential facts from those found by the judge. There appears no substantial dispute as to the underlying facts.

[2]The town obtains all of its water supply from wells, and the locus is in area 1 of the WRPD, the zone that charges the wells.

[3]In 1972, title to the locus was held by V.S.H. Realty, Inc., which was dissolved and merged into CFI in 1984. We refer to the property owner as "CFI."

[4]We recognize the distinction between uses and structures. The two tanks were nonconforming structures; the sale of gasoline, a nonconforming use. We assume that both nonconformities were lawful prior to 1972, as the town has made no assertion to the contrary, and the subsequent proceedings appear to acknowledge lawfulness of the replaced tanks and the historic gasoline sales.

building inspector. On or about September 1, 1994, CFI received a building permit to remove the existing tanks and to install one 6,000 and one 12,000 gallon tank in their place. The two tanks were immediately installed. However, a few weeks later, the building inspector, acting as the town's zoning enforcement officer, ordered CFI to comply with the board's 1972 letter dated September 26, which had approved the installation of three 4,000 gallon tanks, thus limiting gasoline storage to 12,000 gallons pending approval of an increase by the board. Likewise, the fire chief advised CFI that gasoline storage would be limited to 12,000 gallons, pending approval of an increase by the board.

As a result, CFI applied to the board for two separate special permits to allow full utilization of the two tanks to a total capacity of 18,000 gallons.[5] The first special permit application referenced § 3-G-(2) of the zoning by-law, which pertains to the extension, alteration, change or rebuilding of pre-existing, nonconforming structures or uses.[6] The second application was pursuant to § 10-D-3-(a)-1, which requires a special permit for the expansion of an existing nonconforming use within the WRPD.[7] On the first application the board voted to deny, but

---

[5]CFI also applied for site plan approval, but that application and the board's action thereon is not part of this appeal.

[6]Sections 3-G-(1) and (2) of the by-law are as follows:

"(1) *Continuation*

"Any lawful building or structure, or use of a building or structure, or land, existing at the time this by-law or any amendment thereto takes effect may be continued although not conforming to the provisions thereof.

"(2) *Repair and Restoration of Non-conforming Buildings*

"Pre-existing, nonconforming structures, or uses may be extended, altered, changed or rebuilt only by Special Permit from the Board of Appeals. Any such rebuilding, change, extension or alteration shall not be more detrimental than the existing nonconforming use to the neighborhood."

There then follow exemptions from the requirement of a special permit, none of which apply here.

[7]Section 10-D-3-(a)-1 recites that expansion of existing nonconforming uses in area 1 of the WRPD is permitted only "under the terms of a Special Permit issued by the Board."

subject to certain conditions.[8] The board denied the second application, the special permit for expansion of a nonconforming use within the WRPD. Additional facts will be mentioned as appropriate to our discussion.

2. *General Laws c. 40A, § 7 — enforcement limitations.* The Land Court judge correctly denied CFI's motion for summary judgment, as the installation, without authority, of the three 6,000 gallon tanks was not and is not protected by the "statute of limitations" in G. L. c. 40A, § 7, as amended through St. 1989, c. 341, § 21, which provides, in pertinent part:

> "[N]o action, criminal or civil, the effect or purpose of which is *to compel the removal, alteration, or relocation* of any structure by reason of any alleged violation of the provisions of this chapter, or any ordinance or by-law adopted thereunder, or the conditions of any variance or special permit, shall be maintained, unless such action, suit or proceeding is commenced and notice thereof recorded in the registry of deeds for each county or district in which the land lies within ten years next after the commencement of the alleged violation" (emphasis supplied).

The three 6,000 gallon tanks are no longer in the ground — those unlawful tanks were replaced by the existing tanks. The existing structures on the site, as we have noted, have not yet been there for ten years.[9] Additionally, there is no civil or criminal action initiated by the town or any agency in this case; rather, this is a zoning appeal initiated by CFI. Further, no

---

[8] In a unique "denial," the board stated as a "condition" of its denial that "[n]o more than 12,000 gallons of gasoline shall be stored on the site between the two tanks." The board in its decision stated that violation of the condition "can result in [an order] mandating the removal of the tanks and return to the condition authorized by previous decision of the Board." The judge ruled that this procedurally unusual resolution effectively sanctioned "the continued existence of the two tanks, provided the 12,000 gallon limitation is observed [constituting], [i]n effect . . . a grant of special permits under sections 3-G-(2) and 10-D-(3)-(a)-(1) of the by-law changing the existing non-conforming use." This part of the judge's decision is not discussed by the parties.

[9] To the extent CFI argues that it was entitled by right to replace a lawful pre-existing nonconforming structure, the limitation period of G. L. c. 40A, § 7, does not render the prior structure lawful, just immune from enforcement action. Cf. *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 528-531 (1990). See part 3, *infra.*

removal, alteration or relocation of any structure is required or sought by the board. Finally, we see no merit in CFI's argument that the 12,000 gallon capacity limitation somehow constitutes alteration of the structure. If anything, it is a limitation of its approved lawful capacity.

3. *Special permit requirement.* CFI seeks authority to maintain two tanks, one 6,000 gallons and one 12,000 gallons, where the town, in 1972, allowed three 4,000 gallon tanks. CFI seeks to use the currently existing tanks to capacity, i.e., to store 18,000 gallons of gasoline when the town has authorized maximum storage of 12,000 gallons. The board properly required CFI to obtain a special permit for extension or alteration of a nonconforming use under G. L. c. 40A, § 6. General Laws c. 40A, § 6, as amended by St. 1975, c. 808, § 3, provides, in pertinent part, that the provisions of a town's zoning by-law:

> "shall apply to *any change or substantial extension of such* [nonconforming] *use . . . ,* to any reconstruction, extension or structural *change of such structure* and to any alteration of a structure . . . to provide for its use for . . . the same purpose . . . to a substantially greater extent . . . . Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be *substantially more detrimental* than the existing nonconforming use to the neighborhood." (Emphasis supplied.)

CFI's proposal is, at the least, an extension of a nonconforming use and a change to nonconforming structures and thus is subject to the requirement of a special permit under the zoning by-law.[10]

CFI argues that no special permit was required from the board because the expansion of storage capacity from 12,000 to 18,000 gallons is not a "change or substantial extension" of the nonconforming use, see c. 40A, § 6, under the test enunciated

---

[10]See note 6, *supra.*

in *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966).[11] However, CFI did not appeal from the building inspector's order, but instead filed applications for special permits. Accordingly, CFI cannot now, in effect, challenge the validity of the order or the requirement of a special permit, where CFI failed to appeal, and instead applied for the special permits. See *Bonfatti* v. *Zoning Bd. of Appeals of Holliston*, 48 Mass. App. Ct. 46, 49-50 (1999). The failure to exhaust administrative remedies is jurisdictional in nature, and the court may not hear the matter if it was not appealed to the local board of appeals. *McDonald's Corp.* v. *Seekonk*, 12 Mass. App. Ct. 351, 353 (1981).

4. *Denial (with conditions) of the special permit.* As we have noted, note 8, *supra*, the board's decision sanctioned the continued existence of the two tanks, but denied permission to increase the storage capacity from 12,000 to 18,000 gallons of gasoline. The board, noting that the tanks and gasoline sales are prohibited in the district under current zoning, stated that the increased capacity of the tanks expanded the nonconformity and presented a clear detriment to the immediate neighborhood. Thus, the board concluded, allowance of the special permit would derogate from the purpose and intent of the zoning by-law and would be a clear detriment to the public good. The decision evidences the seriousness accorded by the board to the storage of any gasoline at this location. The board noted the history of the site and, implicitly, the board's lack of confidence in the applicant's attention to compliance with the town's lawful regulations. While the board's decision sanctioned the continued existence of the two tanks, more likely than not, the board could have lawfully exercised discretion to require removal of the tanks. The board's action here (i.e., limitation of tank usage to 12,000 gallons instead of requiring removal of the tanks) hardly seems arbitrary or capricious.

CFI argues that the board's decision is arbitrary and capricious for three principal reasons: (1) larger tank capacity would result in fewer deliveries and, consequently, reduce risk of

---

[11]Again, *Mendes* v. *Board of Appeals of Barnstable*, see note 9, *supra*, suggests that a G. L. c. 40A, § 6, analysis rests upon a false premise unless the prior use (or structure) is *lawful* as well as nonconforming. See *Whitten* v. *Board of Appeals of Woburn*, 38 Mass. App. Ct. 949, 950 (1995).

delivery spills; (2) the new state-of-the-art tanks are less likely to leak, compared with the removed tanks; and (3) the board's stated reasons for denial were a pretext, and the real reason was punitive and in retaliation for CFI's historic noncompliance with zoning requirements.

The standards utilized by the local board, and, on appeal, the trial court, in considering the question of substantial detriment, have been reiterated in *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 72-77 (2003) (hereinafter *Britton*). There this court reversed a decision of the Superior Court that had reversed the order of the local zoning board denying a special permit application under G. L. c. 40A, § 6, to allow an addition to a nonconforming single family home on a nonconforming lot. *Id.* at 77. We noted that,

> "[i]n other contexts, we have held that it is 'the board's evaluation of the seriousness of the problem, not the judge's, which is controlling.' We have also held that '[s]o long as "any reason on which the board can fairly be said to have relied has a basis in the trial judge's findings and is within the standards of the zoning by-law and The Zoning Enabling Act, the board's action must be sustained regardless of other reasons which the board may have advanced." ' " (Citations omitted.)

*Id.* at 76.

As in *Britton, supra* at 76, "[t]here is no reason to depart from those principles here. The deference owed the board regarding the seriousness or the adverse . . . impact" upon the town's interest in the watershed and the integrity of the judgment of its town meeting, as evidenced in the zoning by-law, was properly recognized by the trial judge.

The board reasoned that the expansion requested was for a use generally prohibited in the zoning district, and specifically at odds with the obvious intent and purpose of the WRPD. These are reasons that are legally appropriate and substantial. Neither the board nor the trial judge was required to find compelling CFI's inartfully documented argument that larger capacity necessarily translates into fewer deliveries. Nor was the board or trial judge required to believe that the installation

(as mandated by local board of health regulation) of more modern tanks should somehow compel justification for an increase in the amount of gasoline storage. To the extent that the board considered the problematic zoning history of the site, both the board and the court were warranted in their hesitation to credit the conscientiousness of CFI in managing gasoline storage in the watershed district.

"[T]he question for the court is whether, on the facts the judge has found, any rational board could conclude" that the additional gasoline storage proposed by CFI "would be substantially more detrimental to the neighborhood" than the existing 12,000 gallons of storage. *Britton*, 59 Mass. App. Ct. at 74. This element of review "is highly deferential . . . and gives the board discretion to deny a permit application even if the facts found by the court would support its issuance." *Ibid.* "[T]he board's discretionary power of denial extends up to those rarely encountered points where no rational view of the facts the court has found supports the board's conclusion that the applicant failed to meet one or more of the relevant criteria found in the governing statute or by-law." *Id.* at 74-75. Here, the board's view of the facts has a rational basis — that a substantial increase in stored gasoline in a water protection resource district, where the use is otherwise prohibited, would be substantially more detrimental to the neighborhood. The board would not have been irrational to fear that a fifty percent increase in gasoline storage would pose a substantially greater risk to the town's water supply in the event of a leak. This is not an instance where the board denied a permit "simply by conjuring a parade of horribles, particularly when it [had] the power to prevent them." *Id.* at 75. Nor do "[w]e think the board erred [by taking into account] as bearing upon [the] present decision, a putative problem to be faced in the indefinite future upon now uncertain facts." *Ibid.*, quoting from *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 57 (1985).

The judgment of the Land Court is affirmed.

*So ordered.*