LAURENCE SCHIFFENHAUS & others[1] vs. DONALD KLINE
& others.[2]

No. 10-P-1055.

Suffolk. February 9, 2011. - May 26, 2011.

Present: KATZMANN, GRAINGER, & HANLON, JJ.

*Zoning,* Person aggrieved, Issuance of permit, Frontage, Nonconforming use or structure, By-law. *Practice, Civil,* Standing, Moot case. *Moot Question. Subdivision Control,* Approval not required. *Way. Words,* "Alteration."

In a civil action brought in the Land Court challenging a decision of a town board of appeals upholding the issuance of a building permit, the plaintiffs, who were abutters and abutters to abutters of the property that was the subject of the permit, had standing under G. L. c. 40A, § 17, where the defendant property owner failed to proffer any evidence that would rebut the plaintiffs' statutory presumption of aggrievement on the basis that the project would adversely affect traffic on the road on which the plaintiffs' properties were located [602]; further, this court concluded that the plaintiffs were not precluded from asserting aggrievement on the basis of impairment of view, given that the town zoning by-law, although lacking an explicit reference to the protection of views, incorporated by reference the town's local comprehensive plan, which contained an explicit statement protecting views [602-603].

In a civil action brought in the Land Court challenging a decision of a town board of appeals that upheld the issuance of a building permit for a lot that was nonconforming due to having frontage on a street of inadequate width, the judge correctly concluded that the filing by the land owner of an approval not required plan, depicting the existing road as meeting the minimum required width under the town zoning by-law, did not render the case moot. [603-604]

In a civil action brought in the Land Court challenging a decision of a town board of appeals upholding the issuance of a building permit for a nonconforming lot, allowing the transformation of an existing structure into a habitable studio and the construction of a new residence separate from the existing structure, the judge incorrectly concluded that the project

---

[1]J. Anton Schiffenhaus, Alan Solomont and Susan Lewis Solomont.

[2]Duane P. Landreth, as trustee of the Stephens Way Nominee Trust, and the board of appeals of Truro. While there appears to be no dispute that Kline passed away before summary judgment entered, there has been no formal action to replace him as a party to the case.

qualified as an alteration under the town zoning by-law, where, although the by-law itself was unobjectionable (i.e., it enumerated no specific type of change that automatically defeated the claim of alteration, but it did not provide license for unlimited combination of every conceivable change to property, and all at the same time), the town, in both its interpretation and its application of the by-law, strayed beyond the statutory bounds of G. L. c. 40A, § 6. [604-606]

CIVIL ACTION commenced in the Land Court Department on September 5, 2008.

The case was heard by *Gordon H. Piper*, J., on a motion for summary judgment.

*Brian S. Kaplan* for the plaintiffs.

*Diane C. Tillotson* for Donald Kline & another.

*E. James Veara* for board of appeals of Truro.

GRAINGER, J. The board of appeals (board) of the town of Truro (town) issued a building permit to the codefendant Donald Kline for work on his property at 25-27 Stephens Way (Kline property or property). The plaintiffs, direct abutters or abutters once removed, sought judicial review under G. L. c. 40A, § 17. A judge of the Land Court concluded that the town's building commissioner erred in determining that the project would not increase the existing nonconforming nature of the property, and that the board consequently erred in upholding that determination.

*Background.* The facts are undisputed. The property comprises 9.11 acres located in a residential district in the town in which the minimum lot size is 33,750 square feet (or roughly three-quarters of one acre) and the minimum frontage is 150 feet on a street of at least forty feet in width. An owner of conforming property is permitted a single family residence and a "habitable studio" as that term is defined in the town's zoning by-law.[3]

For many years the property contained a small house of roughly 1,970 square feet, predating the present dimensional requirements. That house qualified as a preexisting nonconform-

---

[3] In pertinent part, § 10.4 of the by-law, entitled "Definitions," states: "A habitable studio shall consist of one or more bedrooms, with or without bathroom facilities, in a building detached from the principal residence, which is incidental and accessory to the principal residence and which does not include residential kitchen facilities."

ing structure because the land fronted on a street of inadequate width, found by the judge to vary between nine and twelve feet rather than the required forty. Kline's goal was to transform the existing house into a "habitable studio" by removing the kitchen from that structure, and to construct a new 6,800 square foot residence some 200 feet from the site of the original house. We address the issues in the same order as the judge in his comprehensive memorandum of decision on the defendants' motion for summary judgment.

*Standing.* The judge found that the plaintiffs have standing because the defendants failed to proffer any evidence that would rebut the presumption of aggrievement. We agree. The plaintiffs alleged in their complaint that the project would "increase traffic and exacerbate the unsafe conditions on Stephens Way, interfere with the ability of emergency vehicles to access the plaintiffs' properties, and interfere with the [e]asement that the plaintiffs have over the Kline Property and rely upon for safe access to their properties." Despite the fact that the property relies for access on a road that is deficient in width under the town's zoning code, and was alleged to be deficient in quality by the plaintiffs whose properties are located on the same road beyond the Kline property, the defendants offered no evidence that the project would not adversely affect traffic on what the judge described as "this constrained, narrow, twisting road over which the [p]laintiffs need to pass."

Standing is a prerequisite for judicial review. Accordingly the defendants might still challenge the judge's finding, based as it is on the defendants' failure to rebut the presumption in favor of aggrievement established by the plaintiffs. We therefore also consider the judge's conclusion that the plaintiffs cannot base a claim of aggrievement on impairment of view. The judge correctly noted that a zoning by-law can create a protected interest in views from a landowner's property. See *Martin v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 434 Mass. 141, 146-147 (2001). In this case the by-law itself does not explicitly refer to views; it does however incorporate by reference the town's local comprehensive plan,[4] which contains the following statement: "Long and broad

---

[4]Section 10.2 of the zoning by-law states, "The purpose of this bylaw is

*vistas, sights* of harmonious and distinctive architecture, and *views* of historic and culturally important sites are part of the heritage of Truro. *These resources need to be cared for and preserved for the future"* (emphasis added). There is no reason why a zoning by-law, like any other document, cannot incorporate material provisions by reference — rather than restating them in full — as is the case here. We note that to establish standing the plaintiffs "would need to show a particularized harm to [their] own property and a detrimental impact on the neighborhood's visual character." *Kenner* v. *Zoning Bd. of Appeals of Chatham,* 459 Mass. 115, 121 (2011). Accordingly, in the event that standing resurfaces as an issue in future proceedings, we note that the plaintiffs are not precluded as a matter of law from asserting aggrievement on this basis with a showing that they have suffered a harm specific to their property.

*Mootness.* After the case had been filed in the Land Court, Kline prepared an "approval not required" (ANR) plan, which depicts the road fronting the property as forty feet in width. This plan, he asserted, rendered the case moot because the property was thereby brought into compliance. The judge correctly rejected this argument, noting that the by-law "does not cast its requirement for a road forty feet wide so it can be satisfied merely by drawing a new line on a paper plan."[5] Frontage roads must "in fact exist on the ground." *Perry* v. *Planning Bd. of Nantucket,* 15 Mass. App. Ct. 144, 151 (1983). Even if the plan alone were deemed adequate, "[t]he Board may disapprove a plan if it determines the access road to the subdivision is inadequate." Truro planning board subdivision regulations, § IV (f)2. See *Perry, supra,* 153 (board can properly disapprove a plan "because of inadequate access, despite technical compliance with frontage requirements"). Here, moreover, the regulation specifically requires a width of forty feet; it does not permit a separate overriding determination that a lesser width is permissible if it can be deemed of "sufficient width, suitable

---

. . . to promote the implementation of the goals and policies of the Truro Local Comprehensive Plan."

[5]Lot frontage is defined in the by-law as "[t]hat portion of a lot fronting upon and having access to a street." By-law § 10.4. "[S]treet right-of-ways shall be 40 feet" in their minimum width. Truro planning board subdivision regulations, § IV(b). See By-law § 10.4 (defining "street" as conforming to subdivision regulations).

grades and adequate construction." Compare G. L. c. 41, § 81L(c), as amended by St. 1956, c. 282. As the judge further noted, even if the ANR plan reflected reality, it would result in a nine- to twelve-foot-wide road that temporarily balloons to forty feet while passing along the Kline property and then returns to its constricted state. This casts doubt on whether it provides "adequate access to all of the lots in a subdivision," G. L. c. 41, § 81M, added by St. 1953, c. 674, § 7, especially after the project has quadrupled the living space, and inferentially the use, of the property.

*Alteration.* The judge determined that the building commissioner did not abuse his discretion in determining that the "project fits the Truro definition of an 'alteration.' " Our review of the meaning of statutory or regulatory language is de novo. *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006).

Section 10.4 of the by-law defines alteration as follows:

> "Any construction, reconstruction or related action resulting in a change in the structural parts, height, number of stories, exits, size, use or location of a building or other structure or any other related change."

We conclude that the project fails to qualify under this definition.

Our analysis begins with the fact that, considered independently, the erection of any new building requires conformity with current zoning regulations. G. L. c. 40A, § 6. A simultaneous and additional change to the property — here, removal of kitchen facilities from the original structure — does not remove this requirement by converting the new house into an alteration of the old cottage. Efforts to characterize the new house as an alteration of the original one as a consequence of removing the old cooking facilities are unpersuasive, as there is no requisite connection: an entirely new building in a different location, which is also completely different in appearance and more than four times the size of its predecessor, cannot correctly be deemed an "alteration" of the original. That conclusion is unavoidable both from the perspective of regulatory terminology and common usage.[6]

---

[6] "[A]lter, 1: to cause to become different in some particular characteristic

The by-law is broadly worded and contemplates within the definition of "alteration" almost any conceivable change, including that of location, to an existing structure. The by-law, however, is also worded in the disjunctive — and properly so. While the by-law enumerates no specific type of change that automatically defeats the claim of alteration, it does not provide license for the unlimited combination of every conceivable change to property, and all at the same time. This is in conformity with the view that the "ultimate objectives of zoning would be furthered by the eventual elimination of non-conformities in most cases." *Bransford* v. *Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 859 (2005), quoting from Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act, 1972 House Doc. No. 5009 at 32, 39.

The statutory authority conferred upon the town under c. 40A provides it with the power, subject to an abuse of discretion or clear error, to determine when an alteration has — or has not — occurred. However, the statute does not permit the town to ignore the legislative provision requiring conformity with current zoning requirements by the simple expedient of declaring every change, and every simultaneous aggregation of changes, to be no more than an "alteration" of nonconforming property. It is axiomatic that "[a] by-law cannot conflict with the statute." *Planning Bd. of Reading* v. *Board of Appeals of Reading*, 333 Mass. 657, 660 (1956). Here, the by-law itself is unobjectionable, but both in its interpretation and its application of the by-law, the town has strayed beyond the statutory bounds.[7] Nor, in this context, can it be asserted that the by-law's catchall phrase "any other related change" permits the unlimited combination of changes while the preceding body of the by-law does not. That phrase merely allows for the consideration of changes not explicitly listed.

Finally we note that the judge correctly recognized the

. . . without changing into something else." Webster's Third New Int'l Dictionary 63 (2002).

[7]We note that in oral argument before us the town asserted that in nineteen years, without exception, it had never determined that a change did not qualify as an alteration, and that it was within its authority in so doing. Our decision is however limited to the facts of this case.

magnitude of the project and multiplicity of proposed changes to the property when he determined, even while incorrectly allowing the building commissioner's determination of "alteration" to stand, that the project undeniably signified an expansion to the property's nonconformity.[8]

*Conclusion.* The judge's remand to the board is affirmed for further proceedings consistent with this opinion, and specifically subject to our determination that the project does not constitute an alteration.[9]

*So ordered.*

---

[8]We note as well that the judge properly applied the holdings of *Bransford* v. *Board of Appeals of Edgartown*, 444 Mass. at 832, and *Bjorklund* v. *Zoning Bd. of Appeals of Norwell*, 450 Mass. 357 (2008), in determining that a change to the structure triggered the statute even though the existing nonconformity related to the lot (frontage). See *Bransford, supra* at 861 (rejecting argument that "no problem exists because [the plaintiffs'] nonconforming lot will remain exactly the same with the reconstructed residence").

[9]The judge noted that "[n]otwithstanding the commencement of this action, Kline broke ground and commenced [the project]. On October 23, 2008, counsel for all parties appeared for a case management conference, at which I cautioned counsel for Kline that he proceeded with construction at his own risk, being fully aware of the pending challenge."