MILKEY, J.
*378 Before us now is yet another chapter in the saga of a residence in Truro (town) known as the "Kline house" (house).
*379 In 2011, we held that the building permit pursuant to which the house was built was invalid, and we remanded the case for further proceedings.
*1010 Schiffenhaus v. Kline, 79 Mass. App. Ct. 600, 604-606, 947 N.E.2d 1133 (2011). Town officials subsequently ordered that the house be removed. Meanwhile, the private parties who had brought the action challenging the building permit dropped their opposition to the house after they reached a settlement agreement with the house's current owners.[3] Eventually, town officials also settled with the current owners, and an agreement for judgment approved by a Land Court judge allowed the house to remain. This spurred various individuals who were not parties to the earlier rounds of litigation (or the settlements that flowed from them) to bring the current action seeking to have the house torn down. The question we face is whether it is too late for these plaintiffs to pursue such relief, as the Land Court judge concluded. For the reasons that follow, we affirm the judgment dismissing the case, albeit on a different ground from the one on which the judge principally relied.
Background. 1. The 2008 building permit. At the center of this case is a 9.11-acre parcel overlooking Cape Cod Bay. The parcel was owned by a nominee trust of which Donald Kline was the beneficiary. Kline died during the course of the litigation, which was continued by the trustee of the trust who already was named as a nominal defendant. For ease of reference, we refer to Kline and the trustee interchangeably as the "original owner."
As of 2008, there was a modest, cottage-style residence on the parcel that qualified as a preexisting nonconforming structure. Under the applicable zoning bylaw, further development of the parcel was constrained by the narrow width of the existing town road that provided the parcel's frontage. Nevertheless, the original owner sought to construct a grand new residence there. His specific plan was to convert the existing cottage into a studio, and to construct a new 6,800 square foot structure some 200 feet away. This proposal was put forth as a mere "alteration" of the existing cottage (a preexisting nonconforming structure) that would not increase the nonconforming nature of that structure. The town building commissioner approved the proposal on that basis and issued a building permit. His interpretation of the term "alteration" with such *380 promiscuity apparently was consistent with the town's long-standing application of its zoning bylaw, albeit this time on a particularly audacious scale. See Schiffenhaus, 79 Mass. App. Ct. at 605 n.7, 947 N.E.2d 1133 (noting that town counsel had represented "that in nineteen years, without exception, [the town] had never determined that a change [to an existing nonconforming structure] did not qualify as an alteration").
2. The Schiffenhaus litigation. A group of individuals appealed from the issuance of the building permit to the zoning board of appeals (board). That group included all but one of the current plaintiffs, as well as four other individuals (Schiffenhaus parties). After the board affirmed the issuance of the building permit, the Schiffenhaus parties continued the fight by filing an appeal from the board's decision in the Land Court pursuant to G. L. c. 40A, § 17. The current plaintiffs did not join that litigation. Undeterred by the filing of the Land Court action, the original owner began constructing the house by October 23, 2008, at which point the Land Court judge warned him that he was proceeding at his own risk.
In 2010, the judge ruled that the board acted within its authority when it concluded *1011 that the new house could be considered an alteration of the existing structure that remained. However, the judge also concluded that the board erred in determining that the construction of the house would not increase the existing nonconformity. He therefore vacated the board's decision and remanded the matter to the board to consider whether the original owner's proposal would be "substantially more detrimental to the neighborhood than the existing nonconforming use or structure." The original owner appealed from the judgment to our court. Meanwhile, in February of 2011, the original owner secured a certificate of use and occupancy for the then-completed house.
On May 26, 2011, we issued a decision that affirmed the judgment vacating the board's decision, but on broader grounds. Schiffenhaus, 79 Mass. App. Ct. at 606, 947 N.E.2d 1133. Specifically, we held that, as a matter of law, the house could not be considered an "alteration" of the existing cottage. Id. at 604, 947 N.E.2d 1133 ("an entirely new building in a different location, which is also completely different in appearance and more than four times the size of its predecessor, cannot correctly be deemed an 'alteration' of the original"). We ordered that the matter be remanded to the board for further proceedings. Id. at 606, 947 N.E.2d 1133.
3. The Schiffenhaus parties settle and the town changes its position. Soon after our opinion was published, but before the rescript *381 issued, the original owner filed a petition for rehearing. That petition included some arguments on the merits, but its primary purpose appears to have been to notify us that the private parties in the litigation were close to settling their dispute. Shortly thereafter, the parties reached a settlement pursuant to which the original owner agreed to expand the portion of the parcel that was subject to an existing conservation restriction (thereby providing some additional buffering protection for the Schiffenhaus parties). The record includes allegations that the settlement included unspecified cash payments to the Schiffenhaus parties, but the additional terms of the settlement are not in the record before us.
With the settlement in hand and the rescript still not having issued, the original owner and the Schiffenhaus parties jointly filed a motion to vacate our remand order. They argued that the Schiffenhaus parties were no longer "aggrieved" and therefore lacked standing to maintain the action. Up until this point, the board had been an enthusiastic codefendant supporting the position of the original owner. However, once we adjudicated the building permit invalid, the town changed its position and opposed the motion to vacate our remand order.
We denied the petition for rehearing and the motion to vacate the remand order. Then, once the Supreme Judicial Court denied the original owner's petition for further appellate review, we issued our rescript remanding the case to the Land Court. The Land Court in turn remanded the matter to the board, which on December 19, 2011, ordered the building commissioner to revoke the 2008 building permit. At this point, the board did not purport to determine the fate of the house going forward but, instead, directed the building commissioner to take "such other appropriate action that he deems necessary." The original owner appealed from the board's order, arguing again that because the Schiffenhaus parties who brought the underlying action were no longer aggrieved, the building permit could not be revoked. A different Land Court judge dismissed this new action, and we summarily affirmed.
*1012 Landreth v. Zoning Bd. of Appeals of Truro, 88 Mass. App. Ct. 1115, 41 N.E.3d 330 (2015).
4. The tear-down order. Meanwhile, on remand, the building commissioner formally revoked the 2008 building permit and the 2011 certificate of use and occupancy. In addition, he issued an order requiring that the house be torn down. The original owner appealed from the tear-down order to the board, which affirmed it. The original owner also commenced two new Land Court actions, *382 one challenging the board's affirmance of the tear-down order, and the other seeking to challenge the issuance of that order directly. Those actions were consolidated before a different Land Court judge from the ones who had handled the earlier litigation. By this point, Kline's heirs had sold the property to Thomas Dennis and Kathleen Westhead-Dennis (current owners), who stepped into the original owner's shoes in the litigation.
5. The town board of selectmen settle. On May 17, 2016, the board and the board of selectmen (selectmen) agreed to enter into mediation in an effort to negotiate a settlement of the litigation over the tear-down order.[4] A retired Land Court judge was engaged to serve as the mediator. At this point, the invalidity of the 2008 building permit long had been established; the only question was what enforcement remedy was appropriate. The extent to which the plaintiffs and other members of the public were informed that the town and the current owners had agreed to enter into mediation over this issue was not developed on the current record.
Eventually, the town officials entered into a settlement agreement with the current owners. In essence, the town agreed to allow the house to remain in return for the current owners' agreement to make two types of significant cash payments to the town. The first was a one-time payment of $ 468,000. This was characterized as a "mitigation fee" that was calculated based on a maximum daily fine set forth in the zoning bylaw of $ 300 for a period of 1,560 days.[5] The second type of payment, characterized as a "charitable gift," included a total of $ 2,532,000 to be paid over ten years.[6] In return for the mitigation fee, the town agreed to revoke the tear-down order, reissue a certificate of use and occupancy for the house, and forebear bringing any enforcement action regarding the house *383 based on existing violations.[7] At a selectmen's meeting held on November 29, 2016, the selectmen both announced the terms of the settlement and formally approved it. The following day, the town and the current owners filed an agreement for judgment that included the agreed-to *1013 terms, except that the current owners' commitment to make the $ 2,532,000 "gift" was not included in the agreement for judgment but instead set forth in a separate "pledge agreement." The judge approved the agreement for judgment the day after it was filed, which was two days after it was announced at the public meeting, and judgment entered.
6. The current action. The defendants portray their settlement as constituting a reasonable exercise of the town's enforcement discretion to resolve an intractable situation. The plaintiffs view it instead as the naked sale of enforcement forbearance for cash, "a case of private money being used to buy zoning nonconformity." The plaintiffs decided to bring an action against town officials pursuant to G. L. c. 40A, § 7,[8] seeking to compel them to have the house torn down. As a prerequisite to bringing such an action, they transmitted to the building commissioner on December 5, 2016, a formal request that he refuse to issue a use and occupancy permit to the current owners. The building commissioner denied that request, and then -- consistent with the agreement for judgment -- issued the current owners a certificate of use and occupancy on December 16, 2016. The plaintiffs appealed to the board, which eventually affirmed the building commissioner's denial of the plaintiffs' request. This prompted the plaintiffs to commence the current action in the Superior Court. At the request of the defendants, the action was transferred to the Land Court, where it was assigned to the judge who had approved the agreement for judgment.
With the interests of the house's current owners and town officials once again aligned, the current owners filed a motion, supported by the town, seeking dismissal of the plaintiffs' complaint *384 as time barred on various theories.[9] The judge agreed and dismissed the case. With the plaintiffs having commenced their action more than six years after the issuance of the building permit, the judge ruled that the action was barred by the six-year statute of repose in G. L. c. 40A, § 7. However, the judge principally relied on a different ground. Specifically, citing to Gallivan v. Zoning Bd. of Appeals of Wellesley, 71 Mass. App. Ct. 850, 887 N.E.2d 1087 (2008), the judge ruled that regardless of whether the statute of repose had run, the plaintiffs forfeited their right to seek enforcement regarding the 2008 zoning violation when -- unlike the Schiffenhaus parties -- they failed to appeal from the board's original decision that had affirmed the building inspector's initial grant of the building permit. After judgment entered, this appeal followed.
Discussion. We begin by addressing the principal ground on which the judge relied, namely, that the plaintiffs waived their right to bring an enforcement action by failing to bring a judicial challenge to the original issuance of the building permit. We then turn to the alternative ground regarding the statute of repose.
*1014 1. The plaintiffs' failure to pursue a judicial challenge to the 2008 building permit. By statute, parties aggrieved by a structure that received a building permit they believe violates a zoning bylaw have two different potential judicial paths to follow. See Elio v. Zoning Bd. of Appeals of Barnstable, 55 Mass. App. Ct. 424, 427-428, 771 N.E.2d 199 (2002). The first is by appealing from the issuance of the permit to the local board of appeals pursuant to G. L. c. 40A, § 8, and then -- assuming that entity has affirmed the issuance -- filing a judicial appeal pursuant to G. L. c. 40A, § 17. Pursuing such an appeal is subject to strict short-term deadlines, including that the initial appeal be filed within thirty days of the issuance of the permit. See G. L. c. 40A, § 15.
The second potential pathway for challenging the validity of a building permit is through requesting town enforcement of the zoning bylaw pursuant to G. L. c. 40A, § 7. In the event the *385 building inspector refuses, the aggrieved party can lodge an administrative appeal with the zoning board of appeals pursuant to G. L. c. 40A, § 8, and appeal a refusal by that entity to take enforcement by filing a judicial action pursuant to G. L. c. 40A, § 17. Once someone has requested enforcement by the building inspector, he or she is subject to strict statutory deadlines with regard to any appeals. See G. L. c. 40A, § 15. However, there is no express statutory limitation on when the original enforcement request need be filed, save for the indirect effects of the statute of repose provisions set forth in G. L. c. 40A, § 7 (discussed further infra ).
In Gallivan, 71 Mass. App. Ct. at 853-858, 887 N.E.2d 1087, we addressed how these two potential pathways for challenging a permitted-but-illegal structure relate to each other. Specifically, we faced the question whether a party aggrieved by the issuance of a building permit who failed to bring a timely appeal from the permit nevertheless later could bring an enforcement action that argued that the permit never should have issued. We held that so long as such a party had reasonable notice of the issuance of the permit, pursuing a permit appeal was the exclusive path for challenging the permit. Id. at 857, 887 N.E.2d 1087.
The Supreme Judicial Court since has adopted and amplified the reasoning of Gallivan. See Connors v. Annino, 460 Mass. 790, 796-798, 955 N.E.2d 905 (2011). As the court highlighted in Connors, while a permit appeal provides the exclusive means of challenging the validity of a building permit (assuming reasonable notice was given), the enforcement path otherwise remains available in "appropriate circumstances" to seek enforcement against an illegal structure. Id. at 797, 955 N.E.2d 905. Connors provides three examples of scenarios in which an aggrieved party could use the enforcement path in this context: (1) the aggrieved party had not received adequate notice of the issuance of the permit, (2) the allegedly offending structure was built without a building permit, and (3) the structure was built in a manner that exceeded the scope of a permit. Id. at 797-798 & n.9, 955 N.E.2d 905.
Here, the Schiffenhaus parties chose to bring a G. L. c. 40A, § 17, appeal from the 2008 issuance of the building permit, but the plaintiffs did not. It follows that were the plaintiffs now seeking to challenge the issuance of the building permit, then their *386 efforts would be precluded by the holding of Connors.[10] However, the *1015 plaintiffs are not seeking to challenge the 2008 issuance of the building permit, the validity of which long since has been adjudicated. That permit formally was revoked in 2011, never has been reissued, and -- in plain terms -- no longer exists.
What the plaintiffs are seeking to challenge is the town's 2016 decision declining to take enforcement action against the house, in deference to the settlement agreement that town officials privately negotiated with the current owners. Under the particular circumstances of this case, we discern nothing in Connors (or Gallivan ) that stands as an impediment to their doing so. Certainly, Connors did not expressly anticipate the specific scenario presented here: an action by abutters challenging the failure by municipal officials to remedy an illegal structure, where the illegality of the structure had been finally adjudicated in a judicial proceeding in which the abutters had not been parties. However, that scenario is consistent with the examples Connors depicted of the appropriate use of G. L. c. 40A, § 7.
Before turning to the alternative ground on which the judge relied, we offer some additional comment, lest our rulings so far be misinterpreted. Our conclusion that the Connors rule did not bar the plaintiffs' enforcement action does not necessarily mean that the plaintiffs properly sat on the sidelines during the four-plus years that the original owner's judicial challenge to the tear-down order was being litigated. To be sure, had the plaintiffs sought to intervene at the commencement of that litigation, they may well not have been allowed to do so given that the town actively was defending a zoning order that benefited them.[11] See Prudential Ins. Co. of Am. v. Board of Appeals of Westwood, 18 Mass. App. Ct. 632, 633-635, 469 N.E.2d 501 (1984) (upholding order denying intervention by abutters in such circumstances). See also *387 Morganelli v. Building Inspector of Canton, 7 Mass. App. Ct. 475, 481-486, 388 N.E.2d 708 (1979) (when municipality is party to zoning litigation, it is presumed to represent all its citizens). However, at least once the plaintiffs had notice that the town was engaged in efforts to settle the litigation over the tear-down order without their being invited to participate, the plaintiffs arguably should have moved to intervene. See Haverhill v. Di Burro, 337 Mass. 230, 236, 148 N.E.2d 642 (1958) (recognizing discretion of trial court judge to allow intervention by third-party abutters unhappy with tentative settlement of zoning enforcement action reached by municipal officials and land owner, at least so long as this is done before judgment enters).[12] We recognize that a municipality's efforts to resolve difficult zoning enforcement matters while respecting the rights of affected abutters raises particular challenges. However, whatever else can be said about the process that the town employed here, we urge municipalities not to follow it as a model. *1016 2. The statute of repose. As noted, although the judge ruled that the plaintiffs' action was untimely principally because they failed to bring a judicial challenge to the 2008 issuance of the building permit, he expressly ruled that the action also was untimely because the plaintiffs did not commence it within the six-year limitations period that began to run on the "commencement of the alleged violation" (which -- according to the judge -- was the date that the invalid permit issued). G. L. c. 40A, § 7. Nevertheless, the only discussion of this alternative ground anywhere in the plaintiffs' forty-nine page opening appellate brief is in a single footnote. That footnote argued that the six-year limitation period did not bar this action because -- even though more than six years had passed between the date the original owner had begun construction and the filing of the plaintiffs' action -- no one was residing in the house for much of that time period. In their response brief, the defendants argue that this court need not consider that argument because it was made only in a footnote. See Boston Edison Co. v. Massachusetts Water Resources Auth., 459 Mass. 724, 727 n.3, 947 N.E.2d 544 (2011) ("[A]rguments relegated to a footnote do not rise to the level of appellate argument"). The defendants also argue that, in any event, whether someone had occupied the home for six full years is beside the point. In their reply brief, the plaintiffs repeat their argument that the six-year *388 limitations period did not apply because the house had not been "used" for the full six-year period. They also seek to add an additional argument that the limitations period did not begin to run until the 2008 building permit had been adjudicated invalid.
Before turning to the merits of the plaintiffs' arguments, we briefly address the over-all nature of the six-year limitations provision in G. L. c. 40A, § 7. The Supreme Judicial Court recently has characterized this provision as a statute of "repose," not a statute of limitations. Connors, 460 Mass. at 794 n.8, 955 N.E.2d 905.[13] This is consistent with our own cases. See Patenaude v. Zoning Bd. of Appeals of Dracut, 82 Mass. App. Ct. 914, 914, 978 N.E.2d 1224 (2012) ; Lapidus v. Board of Appeal of Boston, 51 Mass. App. Ct. 723, 726-727, 748 N.E.2d 495 (2001).[14] The essential difference between the two species of limitations provisions is that a statute of repose is less forgiving; it strictly bars actions that are not commenced within a defined period after the occurrence of a key event, without attention to when any injury was discovered, or when any cause of action accrued. See Klein v. Catalano, 386 Mass. 701, 702, 437 N.E.2d 514 (1982). See also Sisson v. Lhowe, 460 Mass. 705, 708-709, 954 N.E.2d 1115 (2011).
In the action before us, the plaintiffs seek the removal of an illegal structure (as opposed to the termination of an illegal use). As we have recognized, G. L. c. 40A, § 7, includes two separate limitations provisions that potentially apply to such an enforcement action. See Lord v. Zoning Bd. of Appeals of Somerset, 30 Mass. App. Ct. 226, 227, 567 N.E.2d 954 (1991). The shorter, six-year limitations period applies where the structure in question was "erected in reliance upon [a building] permit." [15]
*1017 G. L. c. 40A, § 7, second par. The longer, ten-year limitations period applies in any event, that is, regardless of the degree of culpability of the person who *389 created the zoning violation in the first place.[16] See ibr.US_Case_Law.Schema.Case_Body:v1">id. Both limitations periods run from "the commencement of the alleged violation."[17] Id.
With the original owner here having built the house with the 2008 building permit in hand, the judge appears to have assumed that the six-year limitations period applied. So too did the parties. Therefore, there was no examination in the Land Court whether, under the circumstances of this case,[18] the current owners were entitled to claim the benefit of the shorter limitations period instead of the default ten-year period. Because the plaintiffs did not argue this point in the trial court, and did not raise the issue in their opening appellate brief or reply brief, we deem this argument waived.[19] See Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 50 n.7, 691 N.E.2d 545 (1998) (argument "not discussed in the appellate briefs, [or] ... raised with the [trial court] judge" is waived). See also Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1630 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief"). Nothing in this opinion should be read as expressing a view on how such an issue would be resolved.
We turn to the arguments that the plaintiffs did raise with regard *390 to the application of the six-year limitations period. Assuming the six-year statute of repose applies, we agree with the judge that -- at least where a plaintiff is seeking removal of an improperly permitted structure -- the statute bars an action regardless of whether the property owner has used the structure for a full six years. The statutory text precludes such an action where the property has been "improved and used in accordance with the terms of the original *1018 building permit" and the action was not commenced "within [six] years of the commencement of the alleged violation." G. L. c. 40A, § 7, second par. Nothing in the statute requires that the use of the property pursuant to the building permit have lasted continuously for six years. Nor do we conclude that inferring such a requirement is compelled by statutory purpose. Allowing a property owner who has constructed a structure "in reliance upon" a building permit to enjoy the benefit of the shorter limitations period appears to be driven by considerations of fairness. Id. Once such an owner has completed construction and begun using the structure, those considerations would appear to apply with or without six years of continuous use.
With regard to the plaintiffs' argument that the six-year limitations period did not commence until the building permit was adjudicated to be invalid, the plaintiffs failed to raise that argument until their reply brief, and they therefore waived it. See Zabin v. Picciotto, 73 Mass. App. Ct. 141, 174 n.56, 896 N.E.2d 937 (2008) ("We are not required to consider arguments made for the first time in a reply brief"). Even if that argument were properly before us, we would not be persuaded by it. Under the plain language of the statute, the limitations period begins to run upon "the commencement of the alleged violation." G. L. c. 40A, § 7, second par. Where, as here, construction was undertaken with a building permit, the six-year statute of repose would be eviscerated if the violation were deemed to commence only when the permit was adjudicated invalid. Indeed, under such a reading, so long as the building permit had not yet been determined invalid, no statute of repose would apply to an enforcement action based on an allegedly invalid permit, because -- by definition -- the limitations period would not have begun to run. We conclude that a violation is deemed to commence at least by the time that construction began, because the commencement of construction of a structure improperly authorized by a building permit placed the property owner in violation of the zoning bylaw. Here, the judge ruled that the violation commenced even earlier (upon the issuance of the *391 building permit).[20] We need not resolve whether the statutory period began running on the date the permit issued or the date that construction began, because the two events were close in time, and both occurred more than six years before the plaintiffs brought their action. The arguments that the plaintiffs have made with respect to the statute of repose are not tenable.[21]
Conclusion. For the reasons set forth above, we disagree with the judge's principal conclusion that under the particular circumstances presented, the plaintiffs *1019 waived their right to bring an enforcement action by failing to pursue a judicial challenge to the 2008 building permit. Nevertheless, we affirm the judgment based on the statute of repose, the alternative ground on which the judge relied. The limited arguments that the plaintiffs timely raised with respect to that alternative ground are unpersuasive, and other arguments that the plaintiffs might have raised have been waived.[22]
Judgment affirmed.

The house is held by the Stephens Way Nominee Trust 1. Thomas Dennis and Kathleen Westhead-Dennis are the beneficiaries, and Benjamin E. Zehnder is the trustee. For ease of reference, we refer to the trust, trustee, and beneficiaries interchangeably as the "current owners."

The town charter recognizes that the selectmen may act as zoning enforcement officials along with the board and the building commissioner.

The agreement recites that the 1,560 days ran from April 19, 2012, to July 27, 2016. Exactly how the parties arrived at those precise dates is not revealed by the record. In any event, because the agreement made the payment contingent on the resolution of any legal challenges, payment of the $ 468,000 has not yet been made.

Although the payments were characterized as a voluntary "gift," they were secured by an irrevocable standby letter of credit on which the town could draw in the event of nonperformance. The payment of the $ 2,532,000 "gift" was not made contingent on the resolution of any legal challenges, and counsel for the current owners represented at oral argument that the initial annual installments have been paid.

The town also agreed to treat the "Cobb house" as a preexisting nonconforming structure (absent future changes that would make it lose that status). Although the Cobb house is not defined in the settlement papers, we note (based on other documents in the record) that this apparently is a reference to the still-standing cottage on the property.

General Laws c. 40A, § 7, was amended in 2016. See St. 2016, c. 184, § 1. The amendment did not materially alter the pertinent statutory language.

The motion was denominated a motion to dismiss filed pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), or in the alternative, a motion for judgment on the pleadings filed pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). Nevertheless, both parties filed documents outside the pleadings, fleshing out the history of the controversy. In any event, because the essential facts are uncontested, and because the plaintiffs raise no objection to the judge treating the defendants' motion as one for summary judgment, we need not focus on the precise procedural vehicle that the defendants used.

All but one of the plaintiffs plainly had contemporaneous knowledge of the issuance of that permit (given that they participated in the initial appeal from the permit to the board). The situation posed by the remaining plaintiff is less clear, but the judge ruled that she too was barred from bringing an enforcement action based on her failure to challenge the issuance of the 2008 permit.

In some circumstances, abutters who initiate administrative proceedings before boards of appeal are deemed necessary parties to litigation that grows out of such proceedings. See Butts v. Zoning Bd. of Appeals of Falmouth, 18 Mass. App. Ct. 249, 252-253, 464 N.E.2d 108 (1984) (party that appealed issuance of building permit to board of appeals was "original applicant" who had to be joined when land owner challenged town revocation of permit). Here, neither side has addressed this issue.

Such intervention would have allowed the plaintiffs to have their concerns heard, regardless of whether the substantive outcome was changed.

But see Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, 385 Mass. 205, 216, 431 N.E.2d 213 (1982), S.C., 388 Mass. 1013, 446 N.E.2d 1070 (1983).

But see Cumberland Farms, Inc. v. Zoning Bd. of Appeals of Walpole, 61 Mass. App. Ct. 124, 127, 807 N.E.2d 245 (2004) (referring to G. L. c. 40A, § 7, as including "statute of limitations").

In pertinent part, G. L. c. 40A, § 7, second par., states:
"If real property has been improved and used in accordance with the terms of the original building permit, no criminal or civil action intended to compel ... the removal, alteration or relocation of a structure erected in reliance upon the permit by reason of an alleged violation of this chapter ... shall be maintained unless the action, suit or proceeding is commenced ... within [six] years of the commencement of the alleged violation."

In pertinent part, G. L. c. 40A, § 7, second par., states:
"No criminal or civil action intended to compel the removal, alteration, or relocation of a structure by reason of an alleged violation of this chapter ... shall be maintained unless the action, suit or proceeding is commenced ... within [ten] years of the commencement of the alleged violation."

It bears noting that both statutory provisions require that a plaintiff bringing an enforcement action not only commence the action within the respective limitations period, but also -- within that same time period -- record a notice of the action in the registry of deeds or registry district in which the property lies. See G. L. c. 40A, § 7, second par. Neither side has addressed whether the plaintiffs complied with that separate recording requirement and, if not, what consequences would result. See Vokes v. Avery W. Lovell, Inc., 18 Mass. App. Ct. 471, 483 n.20, 468 N.E.2d 271 (1984).

Here, the original owner did not commence construction until after the building permit already had been challenged, and he knowingly continued with that construction at his own risk. Moreover, the owner did not complete construction and begin occupying the house until after the first Land Court judge already had found the board's decision affirming the issuance of the permit wanting.

The plaintiffs addressed the issue in supplemental briefing that we requested sua sponte following oral argument. We simultaneously requested briefing on whether the plaintiffs had waived the issue.

Support for both positions can be found in dicta in the cases. Compare Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, 385 Mass. 205, 217, 431 N.E.2d 213 (1982) (measuring limitations period from date that structure was built), with Connors, 460 Mass. at 799, 955 N.E.2d 905 (suggesting that for purposes of determining when enforcement request under G. L. c. 40A, § 7, could be made, issuance of suspect permit is key date).

We recognize that one still might argue that even if the statute of repose began to run at least by the time construction began, the running of that period should be tolled as a result of enforcement cases actively being pressed by others. In their opening and reply briefs, the plaintiffs do not craft their statute of repose arguments that way, and we therefore do not reach such an argument. We note, however, that at least as a general matter, tolling does not apply to statutes of repose. See Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 n.19, 682 N.E.2d 624 (1997) (statutes of repose are "not subject to any form of tolling").

We note that although we are affirming the dismissal of the plaintiffs' current enforcement action, the house thereby has not been determined to be a lawful structure. Patenaude, 82 Mass. App. Ct. at 914, 978 N.E.2d 1224, citing Cumberland Farms, Inc. v. Zoning Bd. of Appeals of Walpole, 61 Mass. App. Ct. 124, 127 n.9, 807 N.E.2d 245 (2004) (expiration of G. L. c. 40A, § 7, limitations period "does not remove the illegality of an unlawful structure; it simply protects it from enforcement action").