CESAR A. MENDES vs. BOARD OF APPEALS OF BARNSTABLE
& others.[1]

No. 89-P-188.

Barnstable. January 11, 1990. - April 17, 1990.

Present: BROWN, DREBEN, & KASS, JJ.

*Zoning*, Nonconforming use or structure, Variance, Special permit.
*Words*, "Nonconforming use."

Where business use of a certain parcel of land had begun by virtue of a
zoning variance granted by a town's board of appeals after the locus
was already zoned for residential use, and where the town thereafter
adopted no by-law amendment further restricting the use of the locus,
the business use was not a "pre-existing nonconforming use" which the
owners could alter or extend under a special permit issued pursuant to
G. L. c. 40A, § 6. [529-532]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 9, 1987.

The case was heard by *Herbert F. Travers, Jr.*, J.

*Michael D. Ford* for Charles D. Rogers & another.

KASS, J. Rogers and Marney (the "owners") operate a
construction company and are the owners of a parcel of land,
containing close to four acres, on Osterville/West Barnstable
Road in Barnstable (the "locus"), located in a residence zon-
ing district. Under successive variances, granted to them in
1969, 1972, and 1980, the owners erected a building for con-
struction shop work, an addition to that building, and a stor-
age yard for construction materials and equipment.

In 1985, the owners wished to add still further to their
building but a change in Barnstable's zoning by-law ruled
out cutting another slice of the salami through use of the

---

[1]Charles D. Rogers and Edison C. Marney, who had obtained from the
board of appeals the special permit which is the subject of the appeal.

variance procedure as the means to that end. At their 1983 annual town meeting, the inhabitants of Barnstable had amended § Q.2.(e) of the town's zoning by-law to provide that "no [use] variance shall be granted within 300 feet of the major arteries known as Route 28, Route 132, Route 149, and West Main Street."[2] The locus is located in part within 300 feet of Route 28.

Thus barred from pursuing a variance, the owners applied for a special permit for their proposed addition under § G.B. of the zoning by-law,[3] which authorized the board to grant a special permit for an "increase in size of an existing non-conforming building or structure to extend the non-conforming use on the same lot . . . ."[4] The owners reasoned that, as their building did not comply with the use restrictions of the residence zone in which it was located but was there lawfully, it was a nonconforming use. Ergo, it could be added to under a special permit. After several false starts, the owners in 1987 secured a special permit to build a 4,556 square foot addition. A Superior Court judge annulled the permit on the ground that the owners' use of the locus was not nonconforming. He was right and we affirm.

The flaw in the owners' argument lies in a failure to appreciate the statutory meaning of the phrase "nonconforming use." As used in the first paragraph of § 6 of The Zoning Act (G. L. c. 40A, as inserted by St. 1975, c. 808, § 3)[5] and

---

[2]The by-law amendment was approved by the Attorney General February 4, 1984.

[3]A listing of the relevant purposes for which the board may grant special permits for exceptions to the zoning by-law appears in § P.A.4. of the zoning by-law.

[4]The by-law provision elaborated on the power conferred by The Zoning Act on permit granting authorities to extend or alter preexisting nonconforming uses upon a finding that "such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood." G. L. c. 40A, § 6, 1st par., as inserted by St. 1975, c. 808, § 3.

[5]The full text of G. L. c. 40A, § 6, 1st par., is as follows:

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law

§ G. A. of the town by-law, a nonconforming use is one which is lawfully carried on at the time a provision of a zoning code or an amendment to the zoning code is adopted which prohibits that use. So it is that § 6 speaks of "structures or uses lawfully in existence . . . before the first publication of notice[6] of the public hearing on [the prohibitive zoning] ordinance or by-law." That point, that the rights attaching to nonconformity pertain to a use extant prior to commencement of the process leading to adoption of provisions which prohibit that use, is driven home in the next sentence of the first paragraph of § 6, which sets out the basis on which "*[p]re-existing* nonconforming structures or uses" (emphasis supplied) may be extended or altered.

Guided by the The Zoning Act, § G. A. of the town by-law describes a nonconforming use as "[a]ny lawful use of a building or premises, or part thereof, *existing at the time the zoning by-law was originally adopted in the area in which such building or use is . . . located*" (emphasis supplied). Again, the reader will note, a use achieves the status of non-

required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood. This section shall not apply to billboards, signs and other advertising devices subject to the provisions of sections twenty-nine through thirty-three, inclusive, of chapter ninety-three, and to chapter ninety-three D."

[6]This is a reference to the procedure prescribed in G. L. c. 40A, § 5, for adopting or amending a zoning ordinance or by-law. The process begins with publication of notice that there shall be a public hearing on the proposed zoning enactment.

conformity for statutory purposes if it precedes the coming into being of the zoning regulation which prohibits it. This is the construction supported by the cases. See *Connors* v. *Burlington*, 325 Mass. 494, 495 (1950); *Morin* v. *Board of Appeals of Leominster*, 352 Mass. 620, 623 (1967); *Cullen* v. *Building Inspector of No. Attleborough*, 353 Mass. 671, 673-674 (1968).[7] See also *Powers* v. *Building Inspector of Barnstable*, 363 Mass. 648, 651-652 (1973); *Tamerlane Realty Trust* v. *Board of Appeals of Provincetown*, 23 Mass. App. Ct. 450, 454-455 (1987); *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15 (1987). By way of example, if, when the locus was first classified by the town as Residence F, permitting only residential use, a building used for offices and manufacturing ancillary to the construction business had been on the site, that would have been a classic nonconforming use.

In the instant case, since the time the owners first began to use the locus for construction business purposes, the town has adopted no by-law amendment which further restricts or alters the use restrictions which have at all times been impressed on the locus. The owners' use of the premises has never been permitted by the town's zoning regulations and has never been nonconforming in the special sense that it existed "at the time the [use restricting] zoning by-law was originally adopted [or amended]." § G.A. of the town by-law. See also G. L. c. 40A, § 6, 1st par. Use of the site for the construction business began only after the locus was already zoned for residence use. It came about, not through preexisting right, deprivation of which might raise constitutional questions, but through the after-the-fact dispensation of a variance.

---

[7]Although these cases were decided before the enactment of the currently effective Zoning Act (St. 1975, c. 808 § 3), the predecessor act (St. 1954, c. 368, § 2) placed a similar provision in what, under the old act, appeared as G. L. c. 40A, § 5: "a zoning ordinance or by-law or any amendment thereof shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used at the time of adoption of the ordinance or by-law . . . ."

For purposes of deciding whether a use is nonconforming within the meaning of G. L. c. 40A, § 6, the question is not merely whether the use is lawful·but how and when it became lawful. It would be anomalous if a variance, by its nature sparingly granted,[8] functioned as a launching pad for expansion as a nonconforming use. Variance procedures presuppose the prohibition of the use sought and operate as a safety valve to relieve an owner of real estate from the hardship of compliance with a zoning regulation resulting from particular physical characteristics that burden the real estate. *Norcross* v. *Board of Appeal of Boston*, 255 Mass. 177, 184-186 (1926). *Hammond* v. *Board of Appeal of Springfield*, 257 Mass. 446, 447-448 (1926). *Everpure Ice Mfg. Co.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 439 (1949).

The statutory criteria for a variance set out in G. L. c. 40A, § 10, are demanding, and variances are difficult to obtain. *Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 217 & n.6 (1982). By comparison, the special permit power presupposes the allowance of certain uses, but only with the sanction of the local permit granting authority acting in accordance with the fairly flexible criterion of "harmony with the general purpose and intent of the ordinance or by-law." G. L. c. 40A, § 9, 1st par., as inserted by St. 1975, c. 808, § 3. In view of the different approaches to the grant of a variance and a special permit, the former grudging and restricted, the latter anticipated and flexible,[9] we do not think the Legislature intended in G. L. c. 40A, § 6, to authorize the expansion of uses having their genesis in a variance pursuant to the more generous standard applicable to a special

---

[8]*Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 217 & n. 6 (1982), and cases cited.

[9] Under the relatively flexible standard applicable to the allowance of a special permit, the power of a local board to grant a special permit is a discretionary one and such a decision can be reversed only if arbitrary, capricious, whimsical or based on a legally untenable ground. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 559-560 (1954). *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486-487 (1979).

permit. See *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 153-154 (1976), and cases cited; *Shalbey* v. *Board of Appeal of Norwood*, 6 Mass. App. Ct. 521, 529 (1978). Compare *Vasilakis* v. *Haverhill*, 339 Mass. 97, 99 (1959), and *Vokes* v. *Avery W. Lovell Inc.*, 18 Mass. App. Ct. 471, 473, 485 & n.22 (1984), in which there appears language which could be read to mean that the court viewed a use begun under a variance as having the status of a nonconforming use. In neither case, however, did the holding turn on an analysis of the statutory meaning of nonconforming use.

For the reasons stated, the administrative remedy of seeking expansion of a nonconforming use was not available to the owners.

*Judgment affirmed.*