WOOD ON WOOD ROAD, INC. vs. KARLL, MISC 18-000388

































 
 WOOD ON WOOD ROAD INC., Plaintiff, v. STEPHEN KARLL, MICHAEL FORD, RICHARD MCDONOUGH, STEVEN SCIASCIA, and GARY WALKER, as they are the Members of the TOWN OF BRAINTREE ZONING BOARD OF APPEALS, KENNETH INGBER, as Trustee of the WOOD ROAD NOMINEE TRUST, and WOOD ROAD REALTY LLC, Defendants
 MISC 18-000388 
 APRIL 30, 2021
NORFOLK, ss.
FOSTER, J.
DECISION
With: 
MISC 18-000499 : WOOD ON WOOD ROAD INC., Plaintiff, v. ROBERT HARNAIS, ERIN V. JOYCE, JAMES ENG, DARRYL MIKAMI, and JAMES DOWNEY, as they are the Members of the TOWN OF BRAINTREE PLANNING BOARD, and KENNETH INGBER, as Trustee of the WOOD ROAD NOMINEE TRUST, Defendants 
MISC 15-000575 : KENNETH INGBER, as Trustee of the WOOD ROAD NOMINEE TRUST, Plaintiff, v. ROBERT HARNAIS, ERIN V. JOYCE, JAMES ENG, DARRYL MIKAMI, and JOSEPH REYNOLDS, as they are the Members of the PLANNING BOARD OF THE TOWN OF BRAINTREE, Defendants 















 Introduction 





 These three consolidated cases concern the attempts by Kenneth Ingber, as Trustee of the Wood Road Nominee Trust (Trust) and Wood Road Realty LLC (LLC) to obtain the appropriate zoning relief to construct a billboard on their property located at 280-290 Wood Road, Braintree, Massachusetts (property). The property is a prime location for outdoor advertising, sitting on a rise overlooking Interstate Highway 93 (I-93) in Braintree. The Trust's first application for a special permit for the billboard was denied by the Planning Board of the Town of Braintree (Planning Board), leading the Trust to file an appeal under G.L. c. 40A, § 17, in case no. 15 MISC 000575 (the 575 action). After the 575 action was remanded to the Planning Board, the Trust obtained a special permit for the billboard from the Planning Board and a decision from the Town of Braintree Zoning Board of Appeals (ZBA) finding that the construction of a billboard on property is not more detrimental to the neighborhood than the existing nonconformities on the property.





 The abutting property owner, Wood on Wood Road, Inc. (WWR) appealed the ZBA's decision and the Planning Board's special permit under G.L. c. 40A, § 17, in case nos. 18 MISC 00388 (the 388 action) and 18 MISC 000499 (the 499 action), respectively. After all three actions were consolidated, the 388 action and the 499 action were tried to me. As set forth below, I find that the premise on which the billboard was permitted--that it could be considered as a lawful nonconforming structure--was legally wrong. The proposed billboard is a new nonconforming structure that required a variance rather than the finding under G.L. c. 40A, § 6, granted by the ZBA. The ZBA's decision, and the Planning Board's special permit that necessarily relied on the ZBA's decision, were both unlawful and must be annulled. The 575 action, in turn, must be dismissed as moot. 





Procedural History 





 The Trust filed the complaint in the 575 action on December 28, 2015, naming as defendants the members of the Planning Board. The 575 action is an appeal under G.L. c. 40A, § 17, of the Planning Board's decision denying the Trust's application for a special permit. The case management conference was held on March 3, 2016. Upon the Joint Motion for Remand and Postponement of Trial, the court entered its Order of Remand on June 23, 2017, remanding the matter to the Planning Board and retaining jurisdiction over the 575 action. 





 WWR filed the complaint in the 388 action on July 26, 2018, naming as defendants the members of the ZBA, the Trust, and the LLC. The 388 action is an appeal under G.L. c. 40A, § 17, of the ZBA's decision of July 9, 2018, finding that the Trust's proposed billboard on the property is not more detrimental to the neighborhood than the existing nonconformities on the property. On September 28, 2018, Norfolk Superior Court case no. 1882CV00745 was transferred to the Land Court and docketed as the 499 action. The 499 action was brought by WWR, naming as defendants the Planning Board and the Trust, and is an appeal under G. L. c. 40A, § 17, of the Planning Board's May 9, 2018, decision issuing a special permit to the Trust for the Trust's proposed billboard. 





 Defendants Kenneth Ingber, as Trustee of the Wood Road Realty Trust and Wood Road Realty, LLC's Motion to Consolidate this Action (388 action) with Case No. 15 MISC 000575 and Transferred Norfolk Superior Court Civil Action No. 1882CV000745 (motion to consolidate) was filed on September 26, 2018, and Plaintiff Wood on Wood Road, Inc.'s Motion for Preliminary Injunction (PI motion) was filed on October 1, 2018. At the hearing on October 10, 2018, the motion to consolidate was allowed and the 575 action, the 388 action, and the 499 action were consolidated (the consolidated actions), and the PI motion was allowed. The Order Allowing Plaintiff's Motion for Preliminary Injunction issued on October 12, 2018. The case management conference in the consolidated actions was held on October 15, 2018. 





 The pretrial conference in the consolidated actions was held on July 23, 2019. It was determined that the trial would concern the issues raised by the 388 action and the 499 action. The Trust and the LLC stipulated that they would not seek to rebut WWR's presumption of standing. 





 The court took a view on December 4, 2019. Trial was held on December 4, 2019 and February 7, 2020. At the opening of trial, the Trust and the LLC again stipulated that they would not seek to rebut WWR's presumption of standing. The court reporter was sworn. Exhibits 1 through 21 were admitted. Testimony was heard from Kenneth Ingber, Peter Ogren, James Emmanuel, and Douglas Hartnett. The Post-Trial Brief of Plaintiff Wood on Wood Road Inc., the Post-Trial Brief of Town of Braintree Zoning Board of Appeals and Town of Braintree Planning Board, and Defendants Kenneth Ingber, as Trustee of the Wood Road Nominee Trust and Wood Road Realty LLC's Post-Trial Brief were each filed on March 24, 2020. After several continuances due to the state of emergency surrounding the COVID-19 pandemic, closing arguments were heard on May 11, 2020. At its post-trial brief and at the closing argument, the ZBA and the Planning Board moved to dismiss the 575 action as moot. The matter was taken under advisement. This Decision follows. 





Findings of Fact 





 Based on the view [Note 1], the undisputed facts, the exhibits, the testimony at trial, and my assessment of credibility, I make the following findings of fact: 





 1. The Trust is a nominee trust. Kenneth Ingber is the trustee of the Trust. The LLC is the sole beneficiary of the Trust. Tr. 1-21-22. 





 2. The Trust holds title to the property by a deed filed on September 18, 2008, with the Norfolk County Land Court as Document No. 1,160,501, Certificate No. 177421. Exhs. 1, 5; Tr. 1-21-22. 





 3. WWR holds title to the property located at 230-240 Wood Road, Braintree, Massachusetts (the WWR property), by a deed filed on December 17, 2002, with the Norfolk County Land Court as Document No. 949,598, Certificate No. 163874. The WWR property abuts the northeast side of the property. Exhs. 1, 4, 12; view. 





 4. The Trust seeks to build a billboard on the property that would display advertisements to drivers on I-93. WWR also seeks to build a billboard on the WWR property that would similarly display advertisements to drivers on I-93. Under the rules of the Office of Outdoor Advertising (OOA), billboards cannot be closer than 1000 feet to each other. Thus, under these rules, only one of the properties would be permitted for a billboard by the OOA. 





 5. The property is approximately 7.7 acres. It lies between Wood Road on its northwest side and I-93 on its southeast side. The property sits on a rise above I-93. There are two commercial buildings on the property. One is used as gym, and the other is used as an indoor go-cart racing facility with meeting rooms and a restaurant. The property has a paved parking area on its northern half. There is a strip of open space along its northeast side abutting the WWR property and its southeast side where it overlooks I-93. View; Tr. 1-23-24; Exh. 12. 





 6. The property is located in the Highway Business District Zone and the Billboard Zoning Overlay District (BZOD) under the Town of Braintree Zoning Ordinances (Ordinances). Exh. 1; Exh. 2, Ordinances § 135-301. 





 7. Under § 135-701 of the Ordinances, the maximum building coverage for the property is 25%, the maximum lot coverage is 75%, and the required minimum open space is 25%. Exh. 1; Exh. 2, Ordinances § 135-701 Table of Dimensional and Density Regulations. 





 8. The property is nonconforming with the Ordinances because the existing building coverage is 35.7%, the existing lot coverage is 80%, and the existing open space is 20%. The property is also nonconforming with respect to parking. Exh. 1; Tr. 1-80. 





 9. The Trust seeks to construct a billboard on the property that would overlook I-93 (proposed billboard). The proposed billboard would be located on the southeast side of the property, where the paved parking area meets the open space. As ultimately approved, the proposed billboard would be V-shaped, with the point or apex facing I-93 and the flared end facing the parking area. This way, the two faces of the proposed billboard would be visible to drivers traveling in either direction. The proposed billboard would be electronic, with the image changing every ten seconds. The proposed billboard would be 40 feet high, and each face of the billboard would be approximately 14' x 48'. The proposed billboard would be mounted on a 36"- diameter steel column that would be embedded in a 38' x 38' reinforced concrete spread footing foundation, partly in the parking area and partly in the open space area. The footing is discussed in more detail below. Exhs. 1, 9, 12, 21; Tr. 1-35-37, 45, 48; view. 





 10. As discussed, the property is in the BZOD. The BZOD "is a set of requirements which are superimposed over the Highway Business Zoning Districts located along Route 93 and Route 128," as shown on the Town Zoning Map. A billboard installed in the BZOD requires a special permit. The special permit granting authority for billboards in the BZOD is the Planning Board. Exh. 1; Exh. 2, Ordinances §§ 135-910-03, 135-910-04. 





 11. The first application for a digital billboard on the property was denied by the Planning Board by decision issued on December 9, 2015. The height of the billboard project that was denied by the Planning Board in 2015 was fifty feet. Exh. 1. 





 12. On or about August 2, 2017, the Trust submitted an application to the Planning Board for a special permit under the BZOD for construction of an electronic billboard (proposed billboard) on the property; the Trust filed supplements to the special permit application on November 14, 2017, and November 17, 2017 (together, the special permit application). The special permit application was submitted pursuant to the court's Order of Remand of June 23, 2017 in the 575 action. Exhs. 9, 20; Tr. 1-24-25. 





 13. Under the BZOD, the Planning Board "shall not render a decision on an application for a special permit until it has made its findings. Said findings shall include" the following: (1) that the proposed billboard complies with the regulations of the OOA; (2) that no residentially-zoned property is within 1000 feet of the proposed location; (3) that the proposed location does not adversely interfere with the use of adjacent properties, including increasing noise or vibration, casting a shadow on, or causing a flicker on adjacent properties; (4) that the proposed building is in harmony with or suitable for the surrounding area and would not do significant damage to the visual environment; (5) that there will be no flashing lighting; (6) that no sexually orientated, sexually provocative or adult-oriented businesses will be advertised on the billboard; (7) that the Planning Board shall determine the amount of annual hours the billboard shall devote to public service announcements; and (8) "[f]inancial or other compensation to the Town . . . in a form and/or amount identified in an agreement approved by the Office of the Mayor and the Town Solicitor." Exh. 1; Exh. 2, Ordinances § 135-910.05. 





 14. The Planning Board granted the Trust a special permit with conditions for the proposed billboard by a decision filed with the town clerk on May 21, 2018 (special permit decision). Exhs. 1, 10. 





 15. In the special permit decision, the Planning Board made findings that the Trust complied with requirements (3) and (4), and set conditions that prior to construction or during operation, the Trust comply with conditions (1) and (5) through (8). The special permit decision does not appear to address whether the proposed billboard is more than 1000 feet from a residential zone as requirement (2) provides, but the parties do not dispute that the billboard would comply with this requirement. 





 16. I find that the proposed billboard, as described in the special permit application and approved in the special permit decision, complies with requirements (1) through (7) of the BZOD. Exh. 2, Ordinances § 135-910.05; Exhs. 9, 10, 24; Tr. 1-11, 29-30, 34-36, 43-49, 51, 53- 56





 17. With respect requirement (8), the Planning Board made it a condition of the special permit--condition 27--that, "[p]rior to the start of any site preparation and/or issuance of a building permit, the applicant and property owner shall have presented and executed copy [sic] of an agreement reached with the Mayor pursuant to §135-910.05(8) of the Zoning Ordinance. A copy of the agreement shall also be provided to the Planning and Community Development Office." Exhs. 1, 10; Tr. 1-111-112. 





 18. The proposed billboard as approved in the special permit decision is forty feet in height as measured from the ground; however, the topographical elevation of the project's new location is substantially higher than the Trust's original proposal, and the overall above sea level elevation of the billboard as approved by the special permit decision is higher than what the Planning Board rejected in 2015. Exhs. 1, 10. 





 19. Beginning in April 2018, Mr. Ingber, the trustee of the Trust, had multiple email exchanges with Town counsel about the development agreement between the Town and Harbor Outdoor LLC (Harbor), the billboard operator and an entity related to the LLC, for the proposed billboard. Exhs. 11, 19; Tr. 1-37-38, 114-115. 





 20. During these negotiations, the Town and Harbor generally agreed on the financial terms of the development agreement. They disagreed about what the commencement date of the agreement would be--that is, the date on which Harbor would begin to be obligated to make payments to the Town. By May 2, 2018, the Town and Harbor agreed that payments would become due only when Harbor and the Trust had received the permit from the OOA for the proposed billboard and all appeal periods had run. Shortly after, new Town Counsel came on. Mr. Ingber, on behalf of Harbor and the Trust, had a further exchange with new Town Counsel about when the parties would execute the development agreement. By May 21, 2018, they agreed and confirmed that the parties would execute the development agreement "after [Harbor and the Trust] get the state permit and before [they] apply for the building permit." The Trust considered that, based on these exchanges, it had a binding development agreement with the Town. I agree, and so find, that Harbor and the Trust, on the one hand, and the Town, on the other, have a binding development agreement that they have agreed to execute and make effective after the OOA permit for the proposed billboard is issued and final. Exh. 19, at 3659, 3661, 3676; Tr. 1-112-123. 





 21. Pursuant to Ordinances § 135-403, "[p]reexisting nonconforming structures and structures containing a nonconforming use may be extended or altered only if there is a finding by the Zoning Board of Appeals (permit granting authority) that such extension or alteration shall not be substantially more detrimental to the neighborhood than the existing nonconforming structure or use. The proposed extension or structural change must itself comply with the [Ordinances]." Exh. 1; Exh. 2, Ordinances § 135-403. 





 22. The Trust's proposed billboard is a "structure" as defined by the Ordinances. It is not an extension or alteration of an existing structure. Exhs. 1; Exh. 2, Ordinances § 135-102; Tr. 1-73- 74. 





 23. On or about August 14, 2017, the Trust and Wood Road Realty Trust submitted an application to the ZBA requesting a finding pursuant to G.L. c. 40A, § 6, and Ordinances § 135- 403 that the proposed billboard would not be substantially more detrimental to the neighborhood than the existing nonconforming use on the property (although the application concerned nonconforming structures) and also requesting a variance; the Trust filed a supplement to the application on September 25, 2017 (together, the ZBA application). The Trust filed the ZBA application at the suggestion of the planning staff of the Town. Consideration of the ZBA application was stayed while the special permit application was pending before the Planning Board. Exhs. 1, 6; Tr. 1-59-61, 70-71, 74, 77. 





 24. After the May 25, 2018, special permit decision was issued, the Trust filed with the ZBA on June 6, 2018, its "Amended and Restated Statement of Project and Compliance" as a supplement to the ZBA application. On June 25, the Trust filed with ZBA its "Second Amended Restatement of Project Compliance" (the June 2018 supplement). Exhs. 7, 21; Tr. 1-61-62, 77, 124-126. 





 25. In the June 2018 supplement, the Trust and the LLC withdrew their request for a variance, and substituted the site plan approved in the special permit decision. The Trust and the LLC set forth some further details of the proposed billboard and the special permit decision: that the sign pylon would be 36" in diameter on a 38' x 38' concrete footing; that 367 square feet of the footing would be in the open space area; that the footing in the open space area would be covered by 3 to 4 inches of soil with plantings on it; that the special permit decision required that two parking spaces where the concrete footing was to be located would be relocated to two new spaces in an unpaved area at the end of the parking area; that two piers for the sign for Fit Factory, the gym on the property, would be removed, reducing covered area on the property by 22 feet; and that, therefore, the proposed billboard would result in no net increase to building and lot coverage and no net decrease in open space. Exhs. 1, 12, 21; Tr. 1-84-86, 124-126. 





 26. On June 25, 2018, the ZBA issued a decision granting a finding as requested by the Trust and the LLC (the ZBA decision). The ZBA decision was filed with the town clerk on July 9, 2018. Exhs. 1, 8. 





 27. In the ZBA decision, the ZBA "found that the existing commercial building is pre existing nonconforming in terms of the front and rear yard setbacks. The [ZBA] also found that the existing building and lot coverages are pre-existing nonconforming. The Board found the setbacks, building coverage and lot coverages are . . . considered legal nonconforming." Thus "a Finding by the Board that the Project's alterations to the Property will not be substantially more detrimental than the existing nonconformities to the neighborhood [was] required." Exh. 8, at 4, 5. 





 28. The ZBA found in the ZBA decision that the special permit decision required "that the area formerly occupied by two parking spaces will be designated a no parking area. Instead, the [Trust] will create two new parking spaces at the end of the same parking row, also shown on the Revised Plan. Therefore, there will be no net loss of parking spaces." The special permit decision actually requires removal of parking spaces within the fall zone of the proposed billboard, which extends beyond two spaces to include at least five additional spaces. In informing the ZBA of the need to relocate two spaces at the end of the parking row, Mr. Ingber relied on a conversation he had with Christine Stickney, the Town's planning director, in which he was directed to crosshatch two parking spaces around the proposed billboard on the site plan. Exh. 8, at 3; Exh. 10 at 19; Exh. 12; Tr. 1-95-98, 106-111, 127-128, 128-129. 





 29. The ZBA found in the ZBA decision that the billboard's steel pylon support column would increase the lot coverage by ten square feet, but that the increase in lot coverage would be offset by the removal of two concrete piers located in a different area of the property covering approximately 22 square feet (a net improvement of 12 square feet). Exhs. 1, 8. 





 30. The ZBA found in the ZBA decision that the proposed billboard "is therefore not more detrimental to the neighborhood." The ZBA "voted to grant the requested finding, pursuant to [Ordinances] Section 135-403, in accordance with the plans submitted." Exh. 8, at 5, 6. 





 31. Specifically, the ZBA made the following findings in the ZBA decision:





 ...the existing commercial building is pre-existing nonconforming in terms of front and rear yard setbacks. The Board also found that the existing building and lot coverages are pre-existing nonconforming. The Board found the setbacks, building coverage and lot coverages are however considered legal nonconforming due to previous Board variances granted in 2004, 2001 and 1998 setbacks, building coverages and lot coverages. In addition, the Board found that the proposed Project will actually decrease the building and lot coverages due to the removal of two existing ground signs and landscaping/vegetation to be installed above the Digital Billboard's foundation...Lastly, the Board found the overall project to be appropriate for the surrounding neighborhood, appropriately conditioned by the Planning Board, and provide an improvement to the existing building and lot coverages and is therefore not more detrimental to the neighborhood. 





Exh. 8, at 6 (emphasis supplied). 





 32. Pursuant to Ordinances § 135-809, the minimum dimensions for a parking space are 8.5 feet by 18, amounting to 153 square feet. Exh. 1; Exh. 2, Ordinances § 135-809; Tr. 1-144. 





 33. Placing two new spaces at the end of the paved parking area would increase the impervious surface of the property by 306 square feet. It is possible to relocate two parking spaces to locations within the paved parking area. Tr. 1-138, 140-144. 





 34. As discussed, the concrete footing of the proposed billboard would be 38' x 38' and five feet thick. Part of the footing would be in the parking area, and 367 square feet of the footing would be in what is now open space on the property. This open space area consists of fill with plants on top. Exhs. 1, 12; Tr. 2-10, 24, 26-27; view. 





 35. The 367 square feet of the footing in the open space area is proposed to be covered with three to four inches of soil. Exh. 1; Tr. 2-10. 





 36. The soil would be sufficient to support certain plants, but not any of the plants currently in the open space area. Storm water would be absorbed by the soil until it was saturated, at which point the water would pool on the surface and run laterally to the edge of the footing area where it would percolate into the ground. Tr. 2-10-12; 14-16, 18-19, 23-26, 29-30.





 37. The Ordinances define impervious surface as "[a]ny man-made area that does not readily absorb or retain water." Exh. 1; Exh. 2, Ordinances § 135-102. 





 38. The Ordinances define open space as "[u]ndeveloped land maintained in a natural state." Exh. 1; Exh. 2, Ordinances § 135-102. 





Discussion 





Standing. 





 To maintain an appeal of a zoning decision under G.L. c. 40A, § 17, WWR must have standing, in this case meaning that WWR must be a "person aggrieved" by the special permit decision and the ZBA decision. G.L. c. 40A, § 17; Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115 , 117 (2011); Planning Bd. of Marshfield v. Zoning Bd. of Appeals of Pembroke, 427 Mass. 699 , 702-703 (1998). Persons entitled to notice under G.L. c. 40A, § 11, including abutters to the subject property and abutters to abutters within 300 feet of the subject property, are entitled to a rebuttable presumption that they are aggrieved within the meaning of § 17. G.L. c. 40A, § 11; 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692 , 700 (2012); Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719 , 721 (1996); Choate v. Zoning Bd. of Appeals of Mashpee, 67 Mass. App. Ct. 376 , 381 (2006). The WWR property abuts the property, therefore entitling WWR to the presumption of standing. The Trust did not seek to abut this presumption. WWR has articulated the same harm as the plaintiff in Clear Channel Outdoor, Inc. v. Zoning Bd. of Appeals of Salisbury, 94 Mass. App. Ct. 594 (2018). "[U]nder the interdependent local and State license requirements [of the OOA] at issue here, the decision granting a special permit to [the Trust] for construction of an electronic billboard within 1,000 feet of [WWR's] property directly affects what is allowed to be built on [WWR's] property. Impacts on use and enjoyment of one's own property are clearly interests protected by the" Ordinances. Id. at 599. WWR's presumption of aggrievement is justified, is based on articulated harms protected by the Ordinances, and has not been rebutted. WWR is an aggrieved party entitled to bring this action. 





Legal standard. 





 The special permit decision and the ZBA decision, like any board decision, are reviewed under a two-part framework, involving "a combination of de novo and deferential analyses." Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469 , 474 (2012). The first step involves determining "whether the board's decision was based on 'a legally untenable ground' or ... on a standard, criterion or consideration not permitted by the applicable statutes or by-laws." Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68 , 73 (2003), quoting MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635 , 639 (1970). A judge must give "substantial deference" to the board's interpretation of its bylaws and uphold a reasonable construction of the board, due to its "special knowledge" of the history and purpose of the bylaws. Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374 , 381 (2009) (internal citations omitted). 





 If the board has used proper criteria and standards in making its decision, the second step for the court is to determine, "on the basis of the facts it has found for itself," whether the special permit decision or the ZBA decision was unreasonable, whimsical, capricious or arbitrary. Britton, 59 Mass. App. Ct. at 74. This step is highly deferential and the board's decision may only be overturned if "no rational view of the facts the court has found supports the board's conclusion." Id. at 75.





The proposed billboard as a nonconforming structure. 





 Under G. L. c. 40A, § 6, a use or structure on a property that has become nonconforming as a result of a change in zoning, but was previously allowed by right, is a protected pre-existing nonconformity. Id.; Barron Chevrolet, Inc. v. Town of Danvers, 419 Mass. 404 , 408 (1995). Such a structure or use may be altered or extended if the special permit granting authority of a town--here, the ZBA--finds that "such change, extension, or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood." G.L. c. 40A, § 6; Ordinances § 135-403. In contrast to a pre-existing nonconformity, a property owner may obtain a variance to allow the maintenance of a new nonconformity on their property only where the rigorous statutory requirements of G.L. c. 40A, § 10, are met. Furlong v. Zoning Bd. of Appeals of Salem, 90 Mass. App. Ct. 737 , 740 (2016). The two types of nonconformities are distinct. The required finding under § 6 to alter or extend a pre-existing nonconformity places a much lower burden on the applicant than that which is required for the grant of a variance under § 10. Thus, a nonconformity allowed by a variance may not be altered or extended merely by a finding of no substantial detriment under § 6. Mendes v. Board of Appeals of Barnstable, 28 Mass. App. Ct. 527 , 531-532 (1990). "It would be anomalous if a variance, by its nature sparingly granted, functioned as a launching pad for expansion as a nonconforming use." Id. at 531 (footnote omitted). This court, presented with the same problem with some frequency, has repeatedly held that "a new nonconformity requires a variance and not simply a special permit." Serna v. Board of Zoning Appeal of Cambridge, 27 LCR 122 , 125 (2019) (Rubin, J.), and cases cited. 





 The existing buildings on the property are lawful nonconforming structures. The property does not conform with the Ordinances because the existing building coverage is 35.7%, greater than the maximum of 25%; the existing lot coverage is 80%, greater than the maximum of 75%; and the existing open space is 20%, less than the minimum of 25%, as required under the Ordinances. The property is also nonconforming with respect to parking. Exh. 1; Exh. 2, Ordinances § 135-701 Table of Dimensional and Density Regulations; Tr. 1-80. Any change, extension, or modification of these existing buildings would require a finding under G.L. c. 40A, § 6, and Ordinances § 135-403. See Rockwood v. The Snow Inn Corp., 409 Mass. 361 , 364 (1991). 





 That is not what the Trust is proposing. The proposed billboard is not a change, extension, or modification of these existing nonconforming structures. As the parties have agreed, it would be an entirely new, separate structure on the property. Contrary to the finding of the ZBA in the ZBA decision, the proposed billboard is not entitled to review and approval under § 6 and § 135-403 on the basis of whether it is substantially more detrimental to the neighborhood. It has to be treated as what it would be--a new structure. See Harrison v. Fouhy, 20 LCR 332 (2012) (Misc. Case No. 11 MISC 444901) (Grossman, J.) (annulling a board's § 6 determination for a proposed new dimensionally nonconforming structure in a new location on a nonconforming lot). Since the Trust proposes to build this new structure on a nonconforming lot, the proposed billboard cannot meet the requirements of the Ordinances. [Note 2] It can only be built if the Trust obtains a variance. Id. The ZBA decision, treating the proposed billboard as an extension of a lawful nonconforming structure rather than as a new nonconforming structure requiring a variance, "was based on 'a legally untenable ground' or ... on a standard, criterion or consideration not permitted by the applicable statutes or by-laws." Britton, 59 Mass. App. Ct. at 73, quoting MacGibbon, 356 Mass. at 639. Since it was based on a legally untenable ground, the ZBA decision must be annulled. 





 For the same reason, the special permit decision must be annulled as well. The BZOD, like most overlay districts, requires that it "be applied in conjunction with the regulations of the base zoning district." Ordinances § 135-102. In other words, a project's compliance with the underlying zoning is a prerequisite to its being eligible for a special permit under the BZOD. Because the proposed billboard does not comply with the building coverage, lot coverage, and open space requirements of the Highway Business District Zone, it was not eligible for a billboard special permit under the BZOD. 





The ZBA decision. 





 While I find that the ZBA decision and the special permit decision must be annulled, in the interests of completeness I will assume, arguendo, that the proposed billboard was an extension of a nonconforming structure and, on that assumed basis, analyze whether the ZBA decision and the special permit decision were properly issued. Section 6 requires that an extension of a lawful nonconforming residential structure, as proposed by the Trust, "must comply with the applicable zoning ordinance . . . Then, if the proposed extension or change conforms to the [ordinance], the . . . statutory sentence requires for project approval a finding that the extension or change will not be substantially more detrimental to the neighborhood than the existing nonconforming structures." Rockwood, 409 Mass. at 364. In other words, a finding that a project would not be substantially more detrimental to the neighborhood than the existing structure does not "entitle[] the developer to make structural extensions or changes that would cause lot coverage or other by-law provisions to be violated." Id. at 365. 





 Applying this standard, the ZBA found (a) that the proposed billboard would not increase the nonconformities on the property--in other words, would not increase or create new nonconformities, and (b) that the proposed billboard would not be substantially more detrimental to the neighborhood than the existing buildings on the property. The ZBA based its first finding on several factors. First, the ZBA found that the proposed billboard's footprint would be ten square feet--the area of the pylon. This footprint would be offset by the removal of the sign for the gym, the two pylons of which have a larger footprint. Thus, the ZBA reasoned, there would be no net increase in building coverage. On its face, the ZBA's math is correct. It depends, however, on two separate findings that need to be reviewed. 





 The ZBA's first finding to be examined is that the 38' x 38' concrete footing would be underground, with the 367 square foot portion of the footing within the open space area covered by soil and plantings. Thus, the ZBA found, there would be no incursion of impervious area or building coverage into the open space area on the property. This finding was reasonable, and I defer to the ZBA's analysis of the Ordinances. Wendy's Old Fashioned Hamburgers of N.Y., Inc., 454 Mass. at 381. The evidence at trial was that the soil on top of the footing would support plants, even if it were not the same plants as currently grown in the open space area. Any stormwater runoff from saturation of the soil above the footing would run to the sides of the footing area and infiltrate into the ground. The definition of "open space" in the Ordinances is "[u]ndeveloped land maintained in a natural state." Exh. 2, Ordinances § 135-102. Based on the testimony and the view, the property's "open space" consists of fill and scrub plants along the border with the WWR property and I-93, and is hardly pristine wilderness. It was not unreasonable for the ZBA to treat the area over the footing, planted with different plants in shallow soil, as part of the same open space. Moreover, even if not technically within the definition of "open space" under the Ordinances, the plantings on top of the footing would qualify as "open space landscaped" under the Ordinances, which can form up to 50% of the open space of a parcel. Id.





 The ZBA also found that the special permit decision's requirement to relocate two parking spaces did not increase the impervious surface on the property. This finding is more questionable. First, the special permit decision required that no parking be allowed within a certain radius of the proposed sign. That radius is larger than two parking spaces. Second, even assuming only two parking spaces would be moved, these spaces were to be relocated in what is now unpaved area, which means impervious area would be increased. The Trust points to evidence that it could actually locate two parking spaces within the paved area, testimony that I credit. The fact remains that the ZBA found (and the Revised Plan submits) that the two moved spaces would be located on a previously unpaved area. This would increase the impervious area of the property, thereby increasing the nonconformity of the property and rendering the proposed billboard ineligible for a finding of no substantial detriment under §§ 6 and 135-403. Rockwood, 409 Mass. at 364-365. The ZBA's finding otherwise was arbitrary and unreasonable, and would be grounds for annulling the ZBA decision and remanding the matter to the ZBA. The special permit decision. 





 Assuming again, arguendo, that the ZBA could have considered the proposed billboard as an alteration of a nonconforming structure, the special permit decision would be affirmed. I find that the evidence supported the Planning Board's finding that the proposed billboard satisfied requirements (1) through (7) of the BZOD. There was a dispute at trial about the Planning Board's finding that the proposed billboard satisfied requirement (8) of the BZOD. This is the requirement that the Planning Board must find, as part of its approval of the special permit, that there is "[f]inancial or other compensation to the Town . . . in a form and/or amount identified in an agreement approved by the Office of the Mayor and the Town Solicitor." Exh. 1; Exh. 2, Ordinances § 135-910.05. At the time of the special permit decision, there was no executed agreement between the Town and the Trust and Harbor. In its finding with respect to this requirement, the Planning Board made it a condition of the special permit decision that, "[p]rior to the start of any site preparation and/or issuance of a building permit, the applicant and property owner shall have presented and executed copy [sic] of an agreement reached with the Mayor pursuant to §135-910.05(8) of the Zoning Ordinance. A copy of the agreement shall also be provided to the Planning and Community Development Office." Exhs. 1, 10; Tr. 1-111-112. 





 I find that this condition was a reasonable interpretation by the Planning Board of Ordinances § 135-910.05(8) and a reasonable finding that the Trust could satisfy that requirement. I find that by the time of the special permit decision, the Town and the Trust and Harbor had reached a binding agreement that complied with § 135-910.05(8). It had sufficient detail, and both parties considered themselves bound. The Trust's request and the Town's willingness to delay execution of the agreement until a final decision of the OOA approving the proposed billboard was in place was not unreasonable. This condition is not grounds for annulling the special permit. 





The 575 action. 





 The final question is the disposition of the 575 action. The 575 action is the Trust's appeal of the Planning Board's initial denial of its application for the BZOD special permit. The matter was remanded to the Planning Board, which then issued the special permit that is the subject of the 499 action. Since the Trust obtained the relief it sought in the 575 action--the issuance of the special permit decision--that action has been rendered moot. To the extent the Trust believes that it can revive the 575 action because I am annulling the special permit decision, it is incorrect. The same reason that the special permit decision is being annulled--that the proposed billboard is a new nonconforming structure that required a variance and thus rendered it ineligible to seek a special permit--would result in affirming the Planning Board's initial denial. The 575 action will be dismissed without prejudice as moot. 





Conclusion 





 For the foregoing reasons, both the ZBA decision and the special permit decision were unlawfully issued, and must be annulled. Judgment shall enter in the 388 action annulling the ZBA decision, in the 499 action annulling the special permit decision, and dismissing the complaint in the 575 action without prejudice. 





 Judgment accordingly. 





FOOTNOTES
[Note 1] A view "inevitably has the effect of evidence, and information properly acquired upon a view may properly be treated as evidence in the case." Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626 , 629 n.5 (2018) (internal citations and quotations omitted); see also Martha's Vineyard Land Bank Comm'n v. Taylor, No. 17-P-1277 (Mass. App. Ct. June 22, 2018) (Rule 1:28 decision). 

[Note 2] The Trust's proposal to remove the two concrete piers for the existing sign for the gym would not render the property conforming. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.